Argued June 7; reversed July 24; rehearing denied
October 9, 1934

# ENYART *v.* MERRICK ET AL.

(34 P. (2d) 629)

*A. E. Reames,* of Medford, for appellant J. E. Enyart.

*Ralph E. Moody,* of Salem, for appellant Grace D. Brown.

*Porter J. Neff* and *George M. Roberts,* both of Medford, for respondents.

KELLY, J. On February 4, 1910, the plaintiff, J. E. Enyart, the defendants, H. C. Kentner, F. E. Merrick and W. H. Brown, now deceased, and John S. Orth, organized a corporation, known as The Natatorium and Amusement Company under the laws of the state of Oregon, with a capital stock of $50,000 divided into 500 shares of common stock of the par value of $100 each.

At the time of the organization of said corporation, the said five incorporators subscribed for all of said capital stock, and the same was issued to them, to wit: 100 shares thereof to each of said five incorporators; and each of them paid into said corporation, on account of their said stock subscriptions, the sum of $1,000.

Three of the actors in the events of this case are dead. They are W. H. Brown, who died April 16, 1921; Clarence L. Reames, attorney for Gordon Voorhies, who died on May 25, 1928, and F. E. Merrick, who died on January 20, 1930.

On June 28, 1911, John S. Orth sold all of his capital stock in said corporation as follows: One share to L. D. Dodge, twenty-four shares to F. E. Merrick,

and twenty-five shares each to J. E. Enyart, H. C. Kentner and W. H. Brown. L. D. Dodge testified that she was merely a nominal stockholder; that in fact, the one share which was issued to her belonged to F. E. Merrick.

At various times, money was borrowed by said incorporators and used for the purposes of the corporation. At such times, notes signed by said incorporators were given.

Both plaintiff and W. H. Brown thus invested funds in said corporation. Plaintiff's contribution was made in two payments. The parties are agreed that the first payment was made on November 26, 1910, and that the amount thereof was $9,675. The second payment was made on or about July 18, 1911, but its amount is in dispute. Defendant Merrick contends that it amounted to $10,037.38. Plaintiff testified that it was approximately $14,200. Appealing defendant claims that Brown invested $15,074.45 in three installments. The actual application of the third alleged installment of $5,074.45 to the purposes of the corporation is disputed by defendant Merrick, although in her brief, for the purposes of the argument upon at least one phase of the case, Mrs. Merrick concedes the total as claimed by Mrs. Brown.

That among the loans, which were obtained by said stockholders to secure funds for said corporation, was one in an amount of $15,000, made to said stockholders upon their joint note, which said loan was made by one Gordon Voorhies on or about May 25, 1910. It is undisputed that on July 8, 1911, for the purpose of securing said loan of $15,000, all of said stockholders, except said L. D. Dodge, surrendered their certificates

of stock (with the exception of five shares) to said corporation and caused said corporation to issue a certificate for 495 shares of said stock to said Gordon Voorhies. It is claimed by defendant, Stella J. Merrick, administratrix, who hereafter will be referred to as defendant Merrick, that in addition, each of said five stockholders assigned to said Gordon Voorhies one share each of the five remaining shares of capital stock. Plaintiff and defendant Grace D. Brown, administratrix, insist that said remaining five shares were not assigned to said Voorhies, but were retained as directors' shares.

On the 18th day of January, 1912, F. E. Merrick paid to said Voorhies said sum of $15,000, due on said note with interest thereon.

It is claimed by defendant Stella J. Merrick, individually, and as executrix of the last will and testament of F. E. Merrick, deceased, that on the 26th day of February, 1912, said Voorhies sold said capital stock to F. E. Merrick and applied the proceeds of said sale to the payment of said note.

We are unable to find that such a sale has been proven. The record tending to support it consists of a purported copy of an alleged agreement authorizing Voorhies to sell the stock pledged as collateral in case of nonpayment of said note, and a letter dated January 18, 1912, addressed to Mr. F. E. Merrick and signed by C. L. Reames, now deceased, wherein, among other things, it is stated that,—

"On July 8th, 1911, the said Orth, Merrick, Brown, Enyart, Kentner and Dodge entered into a written contract with Gordon Voorhies wherein and whereby the said first mentioned parties agreed with Voorhies that he would have the right to sell and dispose and

to transfer said stock whenever he desired to do the same, provided however that before transferring said stock he would first be required to give thirty days notice of his intention so to do.

"I am writing you this notification, as the attorney for Gordon Voorhies, to advise you that Mr. F. E. Merrick has now paid to Mr. Gordon Voorhies the said sum of $15,000 due on said note with interest thereon and in accordance with the terms of said contract that the said Gordon Voorhies will, on the 26th day of February 1912, assign, transfer and sell to the said F. E. Merrick each, every and all of said shares of stock and at said time will deliver said shares of stock and each, every and all thereof to the said F. E. Merrick.

"This notice is given in accordance with, and by virtue of the conditions of said contract hereinabove referred to."

The purported copy of the agreement between Voorhies and said stockholders was excluded from the evidence upon plaintiff's objections, but made a part of the record by defendant Merrick. It consists of an unsigned carbon copy of a typewritten agreement, but it was not identified and the court committed no error in excluding it.

Construing the agreement, however, as set forth in paragraph IX of defendant Merrick's separate answer, it is very apparent that the right of Voorhies to sell the capital stock was dependent upon default in the payment of his note. The letter of Mr. Reames declares that the note was fully paid in January, hence no such right obtained in the following month. Enyart and Mrs. Brown expressly denied having received any notice of such a proposed sale. The character of the purported sale is not such as the law would require. We therefore hold that the purported sale was not established.

■ Defendant, Merrick, contends that even though the evidence were otherwise insufficient to establish the validity and regularity of the Voorhies sale, the long continued acquiescence of Enyart and Brown in the sale constituted a waiver of any irregularity therein and created a conclusive presumption of such regularity and validity.

In support of this contention defendant-respondent cites *Mascall v. Murray,* 76 Or. 637 (149 P. 517). In that case, in the summer of 1891, Mascall purchased the property in suit at an alleged execution sale, which sale was held to be invalid. There was no fiduciary relationship between Mascall, the plaintiff, and the Murrays, who were the defendants. Nineteen years after the purported sale, Mascall instituted the suit to quiet title, "and not until after that time, did the Murrays make an avowal of any right to the land". On April 29, 1891, the Murrays made an assignment for the benefit of their creditors. Both the assignee designated by the debtors and the one later selected by the creditors acted on the assumption that the land in suit had been sold on execution. This court speaking through Mr. Justice HARRIS, say:

"* * * they (the Murrays) not only remained silent, but designedly waited for the express purpose of taking advantage of the statute of limitations as a bar against any unpaid indebtedness whenever the necessary time had run, with the expectation of paying their debts with time only and of recovering the land freed from the claims of others."

The relation of the parties, the knowledge on the part of the Murrays for a long period, in fact for 19 years, of the known hostile and adverse attitude of Mascall clearly distinguish that case from the instant case.

We are unwilling to apply the doctrine of confirmation by acquiescence to the facts of this case.

On February 11, 1910, F. E. Merrick, together with the other directors of said corporation, took and subscribed to the oath of office as such director, wherein, among other things, said Merrick made oath in writing that he thereby accepted the office of director of The Natatorium and Amusement Company; that he would support and defend the constitution and by-laws of said corporation and would perform the duties of a director of said corporation to the best of his ability. Plaintiff and appealing defendant argue that this constituted him a trustee under the terms and conditions of an express trust.

More than a third of a century ago this court, speaking through the late Mr. Justice WOLVERTON, said:

"The relation which a director sustains towards the corporation he represents is well understood. His position is of a fiduciary character, and his relationship is that of a quasi trustee." *Stanley v. Luse,* 36 Or. 25, 32 (58 P. 75).

In the case of *Briggs v. Spaulding,* 141 U. S. 132 (11 S. Ct. 924, 35 L. Ed. 962), the United States Supreme Court by a divided court, speaking through the late Mr. Chief Justice Fuller, we quote approvingly from Spering's Appeal, 71 Pa. St. 11 (10 Am. Rep. 684) wherein Judge Sharswood, speaking for the court, said:

"It is by no means a well-settled point what is the precise relation which directors sustain to stock holders. They are, undoubtedly, said in many authorities to be trustees, but that, as I apprehend, is only in a general sense, as we term an agent or any other bailee intrusted with the care and management of the property of another. It is certain that they are not technical trustees. They can only be regarded as man-

dataries,—persons who have gratuitously undertaken to perform certain duties, and who are therefore bound to apply ordinary skill and diligence, but no more.''

The general rule as stated in Fletcher's Cyclopedia of the law of corporation, is that directors and other officers, while not trustees in the technical sense in which that term is used, occupy a fiduciary relation to the corporation and to the stockholders as a body: Vol. 3, Fletcher Cyclopedia Corporations, 142, § 838.

We venture to quote further from the last named authority:

''Sometimes it is said that a director or other managing officer is a trustee in so far as the corporation and its stockholders are concerned, and sometimes it is said that he is a trustee only as to the corporation itself. However, the better rule seems to be that he is a trustee for an individual stockholder, as well as the corporation, at least in a limited sense, * * * 'Not a strict trustee, for he does not hold title to the shares, not even a strict trustee who is practically prohibited from dealing with his cestui que trust; but a quasi trustee as to the shareholder's interest in the shares.' This view is the one enunciated by Mr. Pomeroy, who, however, excludes from such trust the corporate property itself. In many jurisdictions, however, it is held that directors are not trustees as to shares of stock held by individual stockholders.'' Vol. 3, Fletcher Cyclopedia Corporations, pp. 156-8, § 848.

Speaking through the late Mr. Justice MOORE, this court has said:

''To cite authorities illustrative of the principle that the directors of a corporation are the agents of and trustees for the stockholders, who have a quasi reversionary interest in the corporate property after the payment of the corporate debts, seems unnecessary. * * *'' Davis v. Hofer, 38 Or. 150, 153 (63 P. 56).

"The position of directors has been variously designated and described. Thus, they have been called agents; and they certainly are for some purposes agents of the corporation. They have also been called 'managing partners'; but as they are obviously not partners at all, the phrase is helpful only by analogy. Again, they have been called 'trustees'. But as a trustee is one who holds the title to property for the benefit of another, and as directors are not invested with the title to the corporate property, the inaccuracy of the appellation is apparent. The truth is that the status of director and corporation is a distinct legal relationship. It resembles in some respects those of agent and principal, of managing and dormant partners, of trustee and cestui que trust; but it is different from each." 2 Machen, Corporations, section 1399, quoted approvingly in Vol. 3, Fletcher Cyclopedia Corporations, 156, § 847.

■■■ Further than as indicated by the quoted expressions from the above cited Oregon cases, we are unwilling at this time to extend the analogy of the directors' and stockholders' relationship to that of trustee and cestui que trustent. Notwithstanding that an oath of office is required of corporate directors, and that Merrick subscribed to such oath, we think that he was not a trustee of an express trust. It is argued that the corporation is a trustee of the stockholders under the terms of an express trust. This proceeding is not against the corporate entity and hence the relationship of the corporation to the stockholders has no bearing upon the principles of law involved, which is that no lapse of time is a bar to a direct or express trust as between the trustee and cestui que trust. We hold that between Merrick on the one hand and Enyart and Brown on the other, a fiduciary relationship existed both by reason of the fact that Merrick was a

director of the corporation and Enyart and Brown were stockholders, and by reason of the assumption of dominion, custody and control by Merrick over the stock belonging to Enyart and Brown after the payment of the Voorhies note. Almost universally, courts of equity treat the relationship of director and stockholders as a trusteeship. Its name or terminology is not material. The law is well-settled that a director is not to be permitted to deal with the corporate stock of other shareholders nor with the assets of the corporation so as to make a profit for himself as distinguished from his share of dividends in which his fellow stockholders participate.

On July 8, 1911, section 5, of the by-laws of The Natatorium and Amusement Company was amended to provide:

"* * * Neither the board of directors nor any officer of said corporation shall ever execute any promissory note or other evidence of indebtedness or any deed or bill of sale to any of the property either real or personal of the corporation, nor any mortgage or lien thereon of any kind or nature, nor any contract of any kind or nature providing for the sale thereof, unless such action by such officer and said board of directors, be first previously authorized by a majority vote of all of the stock of said corporation both in numbers and amounts, which said authorization shall be given at a specially called meeting of all of said stockholders and of which each and every stockholder shall first have received five (5) days notice thereof by personal service, and any note, mortgage, deed or contract which shall hereafter be attempted to be either executed or issued by either the board of directors or any other of the officers of said corporation without the previous authorization of the majority of the stock of said corporation first had and obtained as herein

provided, shall be absolutely null and void, and shall not in any manner whatever bind the property of this corporation.''

On said July 8, 1911, section 10 of the by-laws of said corporation was amended by adding thereto the following provision:

"* * * provided however, that no amendment to these by-laws shall ever be made subsequent to the 8th day of July, 1911, unless said amendment shall be previously authorized by the majority vote of all of the stock of said corporation and at a special meeting of said stockholders called for said express purpose.''

On September 9, 1914, certificates of stock were issued, purporting to be evidence of transfers of the 495 shares used as collateral security for the Voorhies loan, to the following named persons in amounts as follows, respectively:

Certificate No. 45 for 165 shares to F. E. Merrick.

Certificate No. 46 for 150 shares to F. E. Merrick.

Certificate No. 47 for 120 shares to S. J. Merrick.

Certificate No. 48 for 20 shares to Walter D. Merrick.

Certificate No. 49 for 20 shares to Ruth M. Merrick.

Certificate No. 50 for 20 shares to Emerson P. Merrick.

These certificates bore the signature of W. H. Brown as president and L. D. Dodge as secretary.

On April 3, 1916, the persons to whom the above certficates, Nos. 45 to 50, inclusive, were issued undertook to change the by-laws by repealing the amendments of the 8th day of July, 1911, above set out.

■ On August 27, 1915, a note was paid, due on demand, dated March 8, 1912, for $5,074.45, executed by Grace D. Brown and W. H. Brown secured by a real estate mortgage. Mrs. Brown testified that the money obtained by means of this note on the date of its execution, namely, March 8, 1912, was invested by Mr. Brown in The Natatorium and Amusement Company in addition to $10,000 theretofore invested therein. Mrs. Brown testified that the note was secured by a mortgage upon her home and she lost her house in the settlement and payment of the note which made quite an impression on her; and that she anticipated that the probable result would be such loss when she executed the note.

It is argued by plaintiff and appealing defendant that by asking Brown to sign the certificates of stock on September 9, 1914, as above stated, Merrick disclosed that he did not consider himself to be the owner of the stock originally issued to Brown at least with reference to one share thereof. It is urged by defendant, Merrick, that by signing the new issue, Brown conceded that he did not own any of the stock thus reissued to others.

We purposely withhold a finding upon the amount of these investments, except to remark that they were in substantial amounts and made under circumstances which invite the consideration of a court of equity.

In the year 1916, Brown signed a voluntary petition in bankruptcy. He did not list among his assets any of the stock of the corporation. He did list among his liabilities some of the obligations of the promoters which were still unpaid, but he stated in his schedules that certain of these obligations, which had been given

for the purchase of the real estate represented obligations incurred in the purchase of the property in which he had no longer any right, title or interest.

It nowhere appears either in pleading or proof that Mr. F. E. Merrick, in reliance upon Brown's statements in his bankruptcy petition, took any course or assumed any burden which otherwise he would not have taken or assumed. For this reason, we consider those statements only in so far as they have a bearing upon the questions of the alleged sale of stock, or acquiescence in the attempted sale, and the alleged laches imputed to Brown.

On May 25, 1921, there was filed in the office of the corporation commissioner of Oregon a resolution dissolving said corporation, which resolution was passed on May 20, 1921, and made such dissolution effective on May 25, 1921; and on said 25th day of May, 1921, the said corporation commissioner issued his certificate dissolving said corporation.

By instruments dated May 22, 1921, the property of the corporation was transferred to F. E. Merrick.

On October 7, 1926, Mr. and Mrs. Merrick conveyed practically all of the property so received to one Caufield, their son-in-law, residing in California. By an instrument bearing date, October 8, 1924, Caufield and wife executed to F. E. Merrick and Stella J. Merrick, as husband and wife, their deed to the same property. This deed was not recorded until February 14, 1930. Manifestly, plaintiff was not aware of these transfers when he filed his original complaint herein. Merrick's answer was filed on December 12, 1927, and contains no reference to the change in the title to said real property from an estate in fee in himself to an estate by the entireties in his wife and himself.

██ The third ground upon which defendant, Merrick, bases her claim that this suit should be dismissed is that of alleged laches on the part of plaintiff and defendant Brown.

In support of this defense, our attention has been called to the failure of plaintiff and Brown to take the risks of the enterprise or bear any part of the burdens of its maintenance. It is argued that subsequent to the payment of the Voorhies note on January 18, 1912, plaintiff and Brown permitted Merrick to carry the load, meet the indebtedness and overcome the obstacles during the continuance of the corporation without contributing anything and that now it would be inequitable to permit them to share in the appreciation or increase in value of the assets of the enterprise. This is in a measure refuted on the part of Brown by the testimony heretofore mentioned to the effect that on March 8, 1912, Brown invested $5,074.45, and by the further fact that Brown continued to act as president of the corporation at least until September 9, 1914. Moreover, there is no suggestion that either plaintiff or Brown was called upon by Merrick to contribute to the corporate funds or perform any services except such as Brown actually did perform.

The plaintiff testified that sometime during 1916, he asked Merrick how the proposition was getting along, to which Merrick replied:

"Well, nothing big. It is just struggling along. I guess it is all right."

Plaintiff, referring to a period up to 1923, further testified:

"Well, when I came back I had conversations with him. I wouldn't say at all times I returned to Medford, but a number of times and it was along about the same lines—still struggling along and operating, and on a

couple of occasions I said to him, I said: 'Fred, don't you think it would be good to kind of liven up the proposition and have a director's meeting or something? Well, he said he didn't see the necessity of it, there was only a few of us and at one time he made the remark that he just didn't know where the books were, he thought Mrs. Dodge had put them somewhere and he said he could look them up and we would at a little later time go over matters.''

It is true that plaintiff did not concern himself with the accounts of the corporation. Except as a participant in the stockholders' meeting, there is no duty resting upon a stockholder as such to interest himself in the details of the corporate management in any case. In fact, to do so would be unwarranted. No notice whatever was given either to plaintiff or Brown of any stockholders' meetings subsequent to 1912.

It is also urged that the obligations which Merrick discharged in operating and maintaining the corporation were in such sums that the aggregate thereof is largely in excess of the contributions of plaintiff and Brown; that the net amount of Merrick's contribution of the property in excess of plaintiff's and Brown's with interest on such excess at the rate of six per cent per annum, forgetting all other considerations, far exceeds the total present value of the property; and hence it would be inequitable to grant either plaintiff or Brown any recovery whatever.

The record discloses that expenditures and payments were made by Merrick approximating $85,000. This statement as to the amount is not intended as an adjudication in any sense. What part of this sum was procured from the business of the corporation and whether any of it was advanced from other funds need not now be decided.

Until the dissolution of the corporation in 1921, we think that both plaintiff and Brown while he lived, and thereafter his personal representative, Mrs. Brown, were stockholders in the corporation. They had contributed large sums of money in furtherance of the interests of the corporation. Merrick's payment of the Voorhies note approximated a similar contribution proportionately. Sufficient of the funds used by Merrick in defraying the obligations of the original incorporators and of the corporation was obtained from the income of the corporation to represent a further substantial contribution by the original stockholders proportional to the amount of stock each held therein; and, viewing it in that light, no injustice will ensue if an accounting is had.

There are two periods which present differing relationships between the litigants besides the interval during which the corporate entity was maintained. They are, first, the interval subsequent to the dissolution of the corporation and prior to the institution of this suit and, second, the period subsequent to the filing of plaintiff's complaint and prior to the trial hereof.

As to the relationship between plaintiff and appealing defendant, on one hand, and defendant Merrick and her late husband, on the other, during the first of these last two mentioned intervals, we think it was in the nature of a cotenancy. The possession of one cotenant, no matter how long continued, does not militate against the rights of the other cotenants, unless and until those not in possession are in some way notified or made aware that the one in possession is claiming adversely to and in disregard of their rights.

As stated, the corporation was dissolved on May 25, 1921; and this suit was instituted on August 22, 1927. The period between these two dates embraces six years and nearly three months. Plaintiff testified that the first knowledge or intimation he ever had that Merrick claimed that plaintiff had no interest in the property formerly belonging to said corporation was in 1926. In the light of this testimony and of the facts hereinbefore outlined, as to the manner in which the dissolution of the corporation and the transfers of its assets were effected, we think that there is not a sufficient showing of delay on plaintiff's part and that of W. H. Brown or reliance thereon by Merrick to his prejudice to warrant a dismissal herein on the ground of laches.

 It is argued that plaintiff and defendant Brown have been guilty of laches during the second interval above mentioned, namely, after the institution of this suit on August 22, 1927, and prior to the trial thereof which began on December 16, 1930, a period of three years, three months and 24 days.

It is very lamentable that death must ensue at any time; and we sincerely regret the passing of Mr. C. L. Reames, whose personal and professional merit, and attainment endeared him to all who knew him. His passing occurred during the pendency of this case. Mr. F. E. Merrick also succumbed after this case was instituted and before trial thereof in the circuit court. These deplorable and wholly regrettable deaths excite our utmost sympathy; but we cannot be unmindful that it is decreed that death is a debt which each of us must some time pay and that plaintiff did not have a monopoly on the knowledge of the inexorable character of

that somewhat somber decree. Defendant could have taken steps to expedite the hearing of this case. It is of record, however, that instead of doing so she neglected to file an answer in her individual capacity to the original complaint at any time before the trial of the case; and thereafter issues were joined as to her by means of a stipulation. As one reason assigned for the delay it appears that plaintiff's attorney thought that the resident judge was prejudiced and had arranged with such judge to call in a nonresident judge to try the case, which plaintiff claims the resident judge failed to do. It is of record also that for a considerable time the resident judge was ill.

In the light of these facts, we hold that there was not such delay in prosecuting or failure to prosecute the case after it was instituted as to warrant a dismissal.

■ We feel that the record is such that we ought not to determine the interests of the respective parties and make a final decree thereon. One reason why this is so is that defendant's answer seems to limit the issues to the question of Merrick's alleged ownership of the stock and to plaintiff's and Brown's alleged laches; whereas, in an accounting, the dictates of fairness require that an opportunity by pleading and proof be accorded defendant Merrick to urge such claim or claims for advances, investments, services and interest as are meet in equity and good conscience.

It follows that the decree of the circuit court is reversed and this cause is remanded for such further proceedings as are not inconsistent herewith.

It is also ordered that the costs herein shall abide the event.

Rossman, J., not sitting.