Argued February 21, affirmed March 21, 1951

# TRYON ET AL. *v.* SMITH (Nine cases)

229 P. 2d 251

*Ralph E. Moody,* of Salem, argued the cause and filed a brief for appellants.

*Charles A. Hart,* of Portland, argued the cause for respondent. With him on the brief were Hugh L. Biggs and Hart, Spencer, McCulloch, Rockwood & Davies, both of Portland.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE and TOOZE, Justices.

## LATOURETTE, J.

Actions by former minority stockholders of the First National Bank of Eugene against Richard Shore Smith, former president and director of said bank, who, together with his family and bank directors, owned approximately 70 per cent of the capital stock of said bank, to recover damages for alleged fraud in the sale of stock of said bank to Transamerica Corporation. A jury having been waived, the respective actions were consolidated and heard as one by the trial court which made findings of fact and conclusions of law against plaintiffs and entered judgment in favor of defendant Smith, from which judgment plaintiffs appeal.

The undisputed evidence discloses that Transamerica made an offer to Smith to purchase from Smith all of the outstanding capital stock of the bank. Smith refused the offer and told Transamerica that he would ''have nothing to do with any of the stock except the controlling interest of the stock in which I am interested, including my own and that of my family.'' Smith also told Transamerica that if it desired to purchase stock of the minority it would have to deal directly with them, that he wanted the minority to have the privilege of selling their stock, and that they were entitled to more than book value and should have at least $220.00 per share. The evidence discloses that the book value of the stock was $200.00 per share at the time of the transactions, and that actual sales theretofore made were for $160.00 and $170.00 per share, to the knowledge of some of the minority stockholders.

Transamerica then proceeded to deal with the minority stockholders and offered them $220.00 per

share for their stock, telling at least some of them that Smith and his associates were to receive for their stock more than Transamerica offered to pay to the minority stockholders for their stock. The minority stockholders thereupon signed up with Transamerica for the sale of their stock at $220.00 per share. Inquiry was never made of Smith or his associates by the minority stockholders of the price Smith and his associates were to receive from Transamerica for their stock, nor did Smith or his associates ever suggest to the minority stockholders, or any of them, that they should sell their stock; in other words, Smith and his associates had nothing whatsoever to do, directly or indirectly, with the sale of the stock of the minority stockholders. In the sale of their stock, the minority stockholders acted freely, at arm's length, and of their own volition. When the sale of the stock was consummated, Smith and his associates received from Transamerica for their stock $460.00 per share as against $220.00 per share which the plaintiffs received for their stock.

The basis for a right of recovery by plaintiffs is found in paragraphs V, VI, VII and VIII of the various complaints, which follow:

"V

"That the said defendant and the said E. B. McNaughton, acting for Transamerica Corporation, entered into an agreement wherein and whereby said Transamerica Corporation agreed to pay a sum of money, unknown to plaintiff, for all of the capital stock of said The First National Bank of Eugene, Oregon, and it was thereupon agreed upon by and between the said defendant and the said Transamerica Corporation that the amount to be paid to the defendant would be increased by any amount that the said Transamerica Corporation

could save in purchasing stock from the minority of the stockholders at a lower price.

## "VI

"That it was the duty of the said Richard Shore Smith as President of said bank and as a Director to inform his stockholders of such agreement and of its terms and conditions, but in violation of his said duty he concealed and failed and neglected to advise the stockholders and aided and assisted in procuring the purchase of their stock by Transamerica Corporation for a sum greatly less than the Transamerica Corporation would have paid had the said stockholders known the truth about the said agreement.

## "VII

"That on numerous occasions, immediately prior to the 5th day of December, 1945, plaintiff had inquired of defendant relative to the value of her stock in the said bank, and the price for which she should sell the same, and defendant failed and neglected to advise her of the value of the said stock as affected by the negotiations for its sale to Transamerica Corporation.

## "VIII

"That plaintiff is advised and believes that Transamerica Corporation was willing to pay the sum of FOUR HUNDRED TWELVE and 00/100 ($412.00) DOLLARS per share for all of the capital stock of the said bank, but in consequence of the failure of the defendant to advise plaintiff of such fact and due to the advice of the defendant to plaintiff that she should sell her *stcok* at a lower figure, plaintiff did, on or about the 5th [d]ay of December, 1945, sell to the said Transamerica Corporation her 62 shares of stock for the sum of TWO HUNDRED TWENTY AND 00/100 ($220.00) DOLLARS per share, and plaintiff has been damaged thereby in the sum of ELEVEN THOUSAND NINE HUNDRED FOUR AND 00/100 ($11,904.00) DOLLARS."

██ The trial court having tried the case without a jury, its findings are conclusive on this court, unless there is no substantial evidence in the case to sustain such findings. We have carefully scrutinized the evidence and find a total absence of any evidence in the record to sustain such allegations other than that Transamerica offered in the beginning of the transactions to pay to Smith for all of the bank's stock the book value of such stock, plus the sum of $500,000.00, which offer Smith conceded was made.

█ There is a further reason why the findings of the trial court are binding on this court, and that is because plaintiffs made no objections to its findings, nor did they request other, different or additional findings; therefore, we may not consider the evidence on which the findings were based. *Consolidated Freightways, Inc., v. West Coast Fast Freight, Inc.,* 188 Or. 117, 212 P. (2d) 1075, 214 P. (2d) 475; *McPherson v. State Industrial Accident Commission,* 169 Or. 190, 196, 127 P. (2d) 344; *School District 106 v. New Amsterdam Cas. Co.,* 132 Or. 673, 676, 288 P. 196.

Counsel, in his presentation of the appeal, frankly admits this to be the law but counters with the propositions that "(a) The findings of fact do not support the judgment." and "(b) The conclusion is contrary to law, under the facts as found."

The conclusion of law formulated by the trial court is as follows:

"Plaintiffs have failed to prove the allegations of their respective complaints. Defendant is entitled to judgment dismissing each of the actions and for defendant's costs and disbursements incurred therein."

The judgment, omitting the recitals, follows:

"IT IS CONSIDERED, ORDERED AND ADJUDGED that plaintiff take nothing against defendant by reason of this action, that this action be and the same is hereby dismissed, and that defendant have and he is hereby granted judgment against plaintiff for defendant's costs and disbursements incurred herein, taxed at $————."

Plaintiffs' position on this proposition is made clear by their argument as follows:

"The fraudulent act in the instant case was the concealment, by the defendant and respondent, from the knowledge of the minority stockholders, of the price that he and his associates were receiving for their shares of stock, and in neither advising nor informing the minority stockholders, the appellants herein, of the transactions had with Transamerica and the price that the majority stockholders were receiving for their shares of stock, prior to the time that the minority stockholders sold their stock to the purchaser of the majority stock."

Plaintiffs, in order to support their position, declare the law to be that majority stockholders of a corporation stand in a fiduciary relation and are under obligations of trust and confidence to the minority stockholders, and for that reason Smith was guilty of unfaithfulness in not apprising the minority stockholders of the Transamerica offer and of what he and his associates were to receive from Transamerica for their stock.

■ It is generally held that majority stockholders may sell their stock at any time and for any price obtainable without informing other stockholders of the price or terms of sale, provided they act in good faith. 3 Fletcher, Corporations (Perm. Ed.), § 900; 19 C.J.S., Corporations, 171, § 793, 13 Am. Jur., Corporations,

962, § 1010; *Roby v. Dunnett,* 88 F. 2d 68; *Stanton v. Schenck,* 251 N.Y.S. 221, 140 M. 621; *Levy v. American Beverage Corp.,* 38 N.Y.S. 2d 517, 265 App. Div. N.Y. 208; *Ryder v. Bamberger,* 172 Cal. 791, 158 P. 753; *McCord v. Martin,* 47 Cal. 717, 191 P. 89; *Blakeslee v. Wallace,* 45 F. 2d 347.

The rule is well laid down in Fletcher, supra, at p. 306, as follows:

> "Ordinarily a director possesses the same right as any other stockholder to deal freely with his shares of stock and to dispose of them at such a price as he may be able to obtain, provided the director acts in good faith, since the corporation as such has no interest in its outstanding stock or in dealing in its shares among its stockholders. In other words, the mere fact that a man accepts the position of a director or an official in a corporation should not as a rule deprive him of his right to dispose of his stock as he sees fit and to make any profit that he might gain, provided in the sale of that stock he has done nothing to injure the corporation and its stockholders."

In 19 C. J. S., supra, we find the following:

> "A director or other officer possesses the same rights as any other stockholder to deal freely with his shares of stock and to sell or otherwise dispose of them at such a price as he may be able to obtain, if not done with fraudulent intent or in violation of his duty to the corporation, * * *."

In the case of *Roby v. Dunnett,* supra, the court held that a majority stockholder has a right to dispose of his shares of stock for any price at any time without being liable to other stockholders, "as long as he does not dominate, interfere with, or mislead other stockholders in exercising the same rights."

██ There being no fiduciary relationship existing between the stockholders of the bank so far as the sale of individual stock was concerned, there was no duty upon the part of Smith to apprise minority stockholders of Transamerica's offer. The fact that Smith et al. received more for their stock than the minority is no evidence of fraud, since it is generally recognized that the stock of majority stockholders is of more value than that of the minority. *Stanton v. Schenck,* supra.

We have carefully read the authorities briefed by plaintiffs and find in every instance that the cases dealt with corporate management, sales of minority stock to majority stockholders, or matters not germane to the question before us, with these two exceptions: *Enyart v. Merrick,* 148 Or. 321, 34 P. 2d 629, and *Dunnett v. Arn,* 71 F. 2d 912.

In the Enyart case, we held that a director of a corporation occupied a fiduciary relationship with a minority stockholder by reason of the assumption of dominion, custody and control by the director over the stock belonging to the minority stockholder, and that "The law is well-settled that a director is not to be permitted to deal with the corporate stock of other shareholders nor with the assets of the corporation so as to make a profit for himself as distinguished from his share of dividends in which his fellow stockholders participate."

In the Dunnett case, the majority stockholders actively urged the minority stockholders, coupled with certain misrepresentations, to sell their stock to a third party. The minority stockholders acted upon the advice and misrepresentations of the majority stockholders—a clear case of fraud.

The facts in the above cases are a far cry from the facts in the instant case.

No case has been cited holding that a fiduciary relationship exists between majority and minority stockholders under facts comparable to the facts in this case.

■ Since there was no fiduciary relationship between the parties and no fraud, duress, domination or interference on the part of Smith in the sale of plaintiffs' stock to Transamerica, the judgment of the trial court is affirmed.