Ned McDANIEL, Mary E. McDaniel and Robert A. Collier, Appellants,

v.

R. D. PAINTER, Dale Painter and Rhodes Danehower, Appellees.

No. 241–69.

United States Court of Appeals Tenth Circuit.

Dec. 1, 1969.

Thomas A. Wood, Wichita, Kan., for appellants.

Thomas D. Kitch and Paul R. Kitch, Wichita, Kan. (Gerritt H. Wormhoudt, Wichita, Kan., on the brief), for appellees R. D. Painter and Dale Painter.

Benjamin C. Langel, Wichita, Kan. (Robert C. Foulston, Wichita, Kan., on the brief), for appellee Rhodes Danehower.

Before MURRAH, Chief Judge, and LEWIS and HILL, Circuit Judges.

HILL, Circuit Judge.

This diversity suit was brought by three minority stockholders against the vendors and vendee of a majority block of stock in The First National Bank of Chanute, Kansas, seeking redress for alleged breaches of fiduciary duties which they contend have resulted in diminution of minority stock valuation. Following interparty depositions, argument on a motion for summary judgment was made to the court and granted in defendants' favor. Appellants now contend that the limited discovery suggests breaches of a fiduciary duty and request that the order be vacated and the case remanded for more extensive discovery and a trial on the merits.

Appellants urge that a fiduciary relationship existed between majority and minority stockholders of the banking corporation, which obligation was breached by the act of selling and purchasing, in five particulars: (1) by unlawfully financing the stock purchase with a pledge of corporate assets and relinquishment of control to the lender in violation of 12 U.S.C.A. § 83; (2) by failure of sellers to investigate the financing method; (3) by conflicts of interest in contracting for the continued services of the former bank president; (4) by failing to inform minority shareholders of the offer to purchase; and (5) by the sale of stock by insiders at a price not available to minority stockholders. The suggested remedy is to place the responsibility upon the majority for making the purchase offer ratably available to all corporate stockholders.

From a review of the briefs and record on appeal there appears no genuine issues of material facts which command the reversal of the summary judgment order.[1] The controversy centers around and was precipitated by a sale of controlling interest stock in The First National Bank of Chanute, Kansas, on March 2, 1966.

Prior to the sale, Dale and R. D. Painter owned 5157 of the 10,000 outstanding shares of capital stock in the Chanute bank; appellants cumulatively control 770 shares. During the preceding ten years very little trading was done in the bank's capital stock, with the per share book value fluctuating upwards from $46.40 in 1955 to approximately $98.00 in 1966. Early in 1965, Dale Painter, with the aid of a disinterested bank, evaluated the worth of the Painter family's interest in the Chanute bank. Several banks in the vicinity were informed of the Painters' willingness to sell to a qualified buyer and requested those banks, in a confidential manner, to refer prospective purchasers to Dale. Ultimately, appellee Danehower was directed to the Chanute bank and, following several months of negotiation and investigation, in March, 1966, bought the Painters' fifty-one per cent interest for $690,000 consideration. Included in the sales contract was provision for assignment of a credit life insurance agency and its assets as well as an agreement that Dale would be retained on the bank's staff for five years at an annual salary of $10,000, personally guaranteed by Danehower in the event the bank released Dale. Of the Painter family, only Dale remains, serving as Chairman of the Board;[2] Danehower is now bank president. After the election of new officers, Dale and Danehower entered into another agreement, the substance of which was that Dale would be retained as a bank employee for five years at $10,000 per annum, to provide the bank his knowledge, experience and business acumen. Since the sale of controlling stock, there is absolutely no indication in the record that the bank has suffered from the change in ownership.

■ Our decision is premised on the conviction that all material facts are before the court and that all inferences from those facts, when drawn most fa-

---

1. *See* McCullough Tool Co. v. Well Surveys, Inc., 395 F.2d 230 (10th Cir. 1968); Frey v. Frankel, 361 F.2d 437 (10th Cir. 1966); Norton v. Lindsay, 350 F.2d 46 (10th Cir. 1965).

2. Dale Painter presently owns 57 shares of bank stock.

vorably to appellants, do not require reversal.[3] By construing all facts and allegations in a light most promising to appellants, we are left with the conclusion that of the five alleged breaches of duty, only the latter two may be considered on appeal. The failure to inform of the sale, and the price discrimination reflected therein pose the possibility of individual injury. The remaining allegations are phrased in terms of corporate injury, for which these appellants may not personally recover.[4] Even if the damage to a stockholder results indirectly, as the result of an injury to the corporation, he may not sue as an individual.[5]

This is a diversity case dependent upon the substantive law of the forum for resolving the questions of law.[6] In the course of arguing the question of "arising under" jurisdiction, the appellants have candidly admitted that there is no appearance of a federal question on the face of the complaint. It is therefore clear that this controversy does not depend upon federal question jurisdiction.[7] This is not a derivative stockholder's suit directly involving the national bank; rather, it is a suit seeking personal recovery and, resultingly, appellants may not rely upon the federal organization of the bank to invoke federal question jurisdiction. This is purely a case for Kansas law. As yet, however, the questions for review have not been squarely presented to the Kansas courts and we are put to the difficult task of anticipating their decision, were the issues before them. In that regard, the

trial court's view of state law will not be disturbed on appeal absent clear error.[8] We are convinced that the trial court did not err.

The cornerstone of appellants' case proposed that a fiduciary duty exists regarding the sale of corporate stock by dominant stockholders and that a breach of that obligation may be redressed by individual stockholder suits. The universally accepted rule was stated by this court in Roby v. Dunnett, 88 F.2d 68, 69 (10th Cir. 1937): " * * * [E]very stockholder, including a majority holder, is at liberty to dispose of his shares at any time and for any price to which he may agree without being liable to other stockholders * * * as long as he does not dominate, interfere with, or mislead other stockholders in exercising the same rights." [9] In other words, a dominant or majority stockholder does not become a fiduciary for other shareholders by reason of mere ownership of stock. It is only when one steps out of the role as a stockholder and acts in the corporate management, with disregard for the interests and welfare of the corporation and its stockholders that he assumes the burden of fiducial responsibility.[10] Thus, when transferring control of the corporation, the managing majority are duty-bound not to sell controlling interest to outsiders if the circumstances surrounding the proposed transfer would alert suspicion in a prudent man that the purchasers are an irresponsible group who will mismanage and loot the corporate assets.[11]

3. Building Mart, Inc. v. Allison Steel Mfg. Co., 380 F.2d 196 (10th Cir. 1967).

4. *See* 13 Fletcher Cyc. Corp. (Perm. Ed.) § 5911.

5. *Id.*

6. Erie Rd. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

7. *See* Gold-Washing and Water Co. v. Keyes, 96 U.S. 199, 24 L.Ed. 656 (1878); Wright, Federal Courts, § 18 (1963 ed.).

8. *See* Fulton v. Coppco, Inc., 407 F.2d 611 (10th Cir. 1969); Gates v. Willford, 406 F.2d 890 (10th Cir. 1969); Continental Casualty Co. v. Fireman's Fund Ins. Co., 403 F.2d 291 (10th Cir. 1968).

9. *See* cases cited in Annot., 50 A.L.R.2d 1146, 1147–1150.

10. 13 Fletcher Cyc. Corp. (Perm. Ed.) § 5805.

11. Insuranshares Corp. of Delaware v. Northern Fiscal Corp., 35 F.Supp. 22 (E.

■■ The fact that controlling stock sells for more than book value, as it did here, is not evidence of fraud since it is generally recognized that majority stock is more valuable than minority stock.[12] Neither is there merit in the argument that appellees, as dominant shareholders, must refrain from receiving a premium which reflects the control potential of the stock. Christophides v. Porco., 289 F.Supp. 403, 405 (S.D.N.Y.1968). Mayflower Hotel Stockholders P. C. v. Mayflower Hotel Corp., 89 U.S.App.D.C. 171, 193 F.2d 666 (1951) does not stand for the broad proposition, as urged by appellants, that majority stockholders have a duty to disclose sales terms when selling control stock. That case dealt with interlocking directorates and the sale of one corporation to another, with the minority selling their interest upon misinformation supplied by the majority. Clearly such a duty exists in those circumstances and falls within the ambit of the Roby rule. We have read the law review articles cited by counsel and conclude that they neither state the law of the forum nor the rules generally applied in other jurisdictions.[13]

The cases relied upon by appellants graphically illustrate the imposition of a fiduciary duty in a multiplicity of situations involving stock sales.[14] Notwithstanding, while each stands for a well stated principle, their rules are inapposite to the facts of this case. In those decisions in which recovery had been granted, the sales involved elements of fraud, misuse of confidential information, looting, siphoning off for personal gain of a business advantage rightfully belonging to the corporation and shareholders in common, or wrongfully appropriating corporate assets.[15] The inappropriateness of these cases is highlighted by appellants' admissions that they know of no specific misconduct on the part of the new management other than the propriety of the loan and the employment contract with Dale Painter.

■■ The sale to Danehower appears in all respects to be fair, free of secret or undisclosed arrangements which could create a suspicious atmosphere, and was consummated in the utmost of good faith. The confidential nature of the transaction and the continued employment of Dale Painter are not indicative of a plot to loot and mismanage the bank but rather reflect the high concern of all parties that the transition period be as smooth and business-like as possible. There is not even a scintilla of evidence to the contrary. To condemn the kind of transaction involved in this case would tend strongly to discourage stock investments and would be a menace to the efficient management of corporate business.

The general rule in Kansas provides that "shares of stock of a corporation are personal property, and may be transferred like any other property, unless the

---

D.Pa.1940); 13 Fletcher Cyc. Corp. (Perm.Ed.) § 5805, at pp. 145–146 and cases cited therein.

12. *See* Essex Universal Corp. v. Yates, 305 F.2d 572, 13 A.L.R.3d 346 (2d Cir. 1962); Levy v. Feinberg, 29 N.Y.S.2d 550 (Sup.1941); Tryon v. Smith, 191 Or. 172, 229 P.2d 251, 254 (1951).

13. Berle, "The Price of Power: Sale of Corporate Control," 50 Cornell L.Q. 628 (1965); Andrews, "Stockholder's Right to Equal Opportunity in the Sale of Shares," 78 Harv.L.Rev. 505 (1965); Jennings, "Trading in Corporate Control," 44 Cal.L.Rev. 1 (1956); *contra* "Sales of Corporate Control and the Theory of Overkill," 31 U.Chi.L.Rev. 725 (1964).

14. Pepper v. Litton, 308 U.S. 295, 60 S. Ct. 238, 84 L.Ed. 281 (1939) (fraudulent confession of corporate debt); Southern Pacific Co. v. Bogert, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099 (1919) (sale of corporate assets); Seagrave Corp. v. Mount, 212 F.2d 389 (6th Cir. 1954) (derivative suit urging constructive fraud); Soderstrom v. Kungsholm Baking Co., 189 F.2d 1008 (7th Cir. 1951) (fraudulent appropriation of business assets); Zahn v. Transamerica Corp., 162 F.2d 36, 172 A.L.R. 495 (3d Cir. 1947) (fraudulent stock redemption); Lebold v. Inland Steel Co., 125 F.2d 369 (7th Cir. 1941) (fraudulent corporate dissolution).

15. Annot., 50 A.L.R.2d 1146, 1150–1156 and cases cited therein.

transfer is restrained by the charter or articles of association * * *." Van Demark v. Barons, 52 Kan. 779, 35 P. 798 (1894).[16]

No mention has been made about restraints on alienation within the corporate charter or articles of incorporation. The spirit and letter of the law have not been violated by parties to the sale. Appellees were free to sell their ownership in the bank to persons who, upon satisfactory investigation, proved to be of sufficient financial worth and good character.

We affirm.

16. *See also* Dewey v. Barnhouse, 83 Kan. 12, 109 P. 1081, 1083, 29 L.R.A.,N.S., 166 (1910); Merrill v. Meade, 6 Kan. App. 620, 49 P. 787 (1897).