948 F.2d 660
 60 USLW 2387, 14 Employee Benefits Cas. 1848
 James R. ERSHICK; Gary R. Frost; Forrest D. Jackson;
Harold Luttrell; Kenneth L. Lutjen; Paul Matthews; Adrian
T. Peeler; Teddy Link Pittman; Robert K. Rusk; Ernest D.
Smith; Michael T. Walter; Alan D. Weiss and David A.
Lindblade, Plaintiffs-Appellants,
v.
UNITED MISSOURI BANK OF KANSAS CITY, N.A., Defendant-Appellee.
 No. 90-3283.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 4, 1991.
 
 Bruce Keplinger of Payne & Jones, Chartered, Overland Park, Kan., for plaintiffs-appellants.
 Gardiner B. Davis (Therese M. Schuele with him, on the brief) Kansas City, Mo., for defendant-appellee.
 Before SEYMOUR, BARRETT and BRORBY, Circuit Judges.
 BARRETT, Senior Circuit Judge.
 
 
 1
 James R. Ershick, et al., plaintiffs below, appeal from an order and judgment entered in favor of United Missouri Bank of Kansas City (UMB) following trial to the court. A summary of the relevant facts will facilitate our review.
 
 
 2
 Gordon Greb founded Greb X-Ray Company (Greb X-Ray), a closely held corporation engaged in selling and servicing medical diagnostic equipment, in the 1950's. Greb X-Ray was a Missouri corporation with its principal place of business in Lenexa, Kansas. Gordon Greb served as the chief executive officer and chairman of the board of Greb X-Ray until his death in 1981. Donald Curtright (Curtright) succeeded Gordon Greb as chief executive officer and chairman of the board.
 
 
 3
 In 1959, Greb X-Ray established the Greb X-Ray Profit Sharing Plan. In 1982, after Gordon Greb's death, the Greb X-Ray shareholders unanimously approved the adoption of the Greb X-Ray Company Employee Stock Ownership Plan (ESOP) to replace the Profit Sharing Plan. Appellants are all former employees of Greb X-Ray, who are fully vested in the ESOP.
 
 
 4
 The ESOP was established pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, et seq. The ESOP provided that "This Plan ... is intended to invest primarily in Company stock ... and shall be construed accordingly to permit investment of up to 100% of the Trust Fund therein." (R., Vol. VII, Tab 164 at p. 3). The ESOP also provided for two fiduciaries, a trustee and an administrator. At all times relevant hereto, Greb X-Ray served as the administrator and UMB served as trustee. In addition to serving as trustee, UMB was also a major secured creditor of Greb X-Ray and was the executor of the Gordon Greb estate.
 
 
 5
 The ESOP provided how the administrator would administer the plan:
 
 
 6
 3. The Administrator shall administer this Plan and shall construe this Plan and Trust Agreement and determine all questions of interpretation or policy in a manner not inconsistent with this Agreement, and the Administrator's construction or determination in good faith shall be final and conclusive.... The Administrator may correct any defect, supply any omission or reconcile any inconsistency in this Agreement in such manner and to such extents as shall be deemed necessary or advisable by it to carry out the purpose of this Agreement....
 
 
 7
 4. The Administrator shall have all powers necessary or appropriate to accomplish its duties under this agreement. Specifically, the Administrator shall have the following duties:
 
 
 8
 * * * * * *
 
 
 9
 (h) To pass upon administrative matters relative to this Plan and Trust;
 
 
 10
 * * * * * *
 
 
 11
 (1) To direct the Trustee(s) with regard to purchases of Company stock and the fair market value thereof.
 
 
 12
 (Addendum to Brief of Appellants, Vol. I, Tab 1 at pp. 38-39).
 
 
 13
 The ESOP also detailed the duties of the trustee, including:
 
 
 14
 [T]he Trustee shall have the following powers in addition to those vested elsewhere in the plan or by law ...:
 
 
 15
 * * * * * *
 
 
 16
 (1) To invest any or all of the Trust Fund in Company Stock.... All purchases and sales of Company Stock shall be made only at the direction of the Administrator. The Administrator shall determine the terms upon which all purchases of Company stock shall be made. All purchases shall be at prices which, in the best judgment of the Administrator, do not exceed the fair market value of the securities in question.
 
 
 17
 (Addendum to Brief of Appellants, Vol. I, Tab 1 at p. 30).
 
 
 18
 Following Gordon Greb's death in 1981, Greb X-Ray's fortunes declined precipitously under the direction of Curtright. (R., Vol. VII, Tab 164 at p. 4). By the summer of 1983, Greb X-Ray's prospects were undermined by a number of factors, including: Curtright's management style, which had alienated Greb X-Ray's employees and customers; Greb X-Ray's obligation to purchase company stock from Gordon Greb's estate; UMB's lowering of Greb X-Ray's borrowing limit to three and one-half million dollars; Greb X-Ray's spending of $50,000 per month for a company airplane; and Greb X-Ray loans made to Curtright at Curtright's direction totalling approximately $120,000. Id. at 4-5.
 
 
 19
 The ESOP did not purchase any Greb X-Ray stock in 1982. However, the ESOP did purchase 410 shares in 1983 at a price of $300 per share and 899 shares in 1984 at a price of $285 per share. The stock was purchased from Greb X-Ray employees. With these stock purchases, the ESOP became the majority shareholder in Greb X-Ray.[1] The ESOP did not purchase any Greb X-Ray shares after 1984.
 
 
 20
 These stock purchases were all made by UMB at the direction of Greb X-Ray as the ESOP's administrator. Before implementing these purchase directives, UMB ascertained that a current stock valuation was on file and that it was used to fix the purchase price of the stock acquired. (R., Vol. VII, Tab 164 at p. 5). The stock valuations ($300 in 1983 and $285 in 1984) were established annually by an independent appraiser not affiliated with Greb X-Ray. Id.
 
 
 21
 From 1982 to 1985, the net asset balance of the ESOP fluctuated from a high of $2,430,658 in 1983 to a low of $1,062,668 in 1985. (R., Vol. IX at p. 308). Similarly, the ESOP's general (non-Greb X-Ray stock) investments declined from $936,206 in 1982 to $117,061 in 1985. Id. During this same period, Greb X-Ray's net pre-tax profits were: 1982, profit of $532,472; 1983, loss of $264,709; 1984, profit of $129,852; 1985, loss of $829,793. (R., Vol. VII, Tab 164 at p. 4).
 
 
 22
 Between March, 1985, and January, 1986, the appellants left the employ of Greb X-Ray. As fully vested ESOP participants, each appellant received an annual statement from UMB relative to their individual accounts. The 1986 statement reflected that their account values had declined by approximately 75% of their former values. (R., Vol. VIII at p. 128; Plaintiff's Exhibits 10, 56-67).
 
 
 23
 Appellants filed this action in 1987 alleging that Greb X-Ray, UMB, the ESOP, and Curtright had violated their fiduciary duties under Section 404(a) of ERISA, 29 U.S.C. § 1104(a) by imprudently investing in Greb X-Ray stock (Count I), and by participating in prohibited transactions in violation of Section 406 of ERISA, 29 U.S.C. § 1106 (Count II). Appellants sought damages representing "the value of what their plan assets would have been worth, had they been prudently and properly invested" (R., Vol. I, Tab 4 at p. 4), interest, punitive damages, and attorney fees. Appellants also sought immediate distribution of benefits from the ESOP (Count III).
 
 
 24
 All parties moved for summary judgment. The district court entered an order in which it: denied appellants' motion for summary judgment; granted summary judgment to Greb X-Ray, the ESOP, and Curtright as to Count III; granted UMB's motion for summary judgment in full. Thereafter, appellants moved for reconsideration and Greb X-Ray, the ESOP, and Curtright moved for summary judgment on Counts I and II.
 
 
 25
 Subsequent thereto, the district court entered an order in which it granted appellants' motion for reconsideration in part by reinstating their Count I claim against UMB. The court also granted summary judgment to Greb X-Ray, the ESOP, and Curtright on Count II but denied their motion for summary judgment on Count I.
 
 
 26
 Prior to trial, appellants settled with Greb X-Ray, the ESOP, and Curtright. Thereafter, a two-day trial to the court proceeded on appellants' Count I claim against UMB within which appellants alleged that UMB had violated § 1104(a)[2] by imprudently investing in Greb X-Ray during a time when the financial condition of Greb X-Ray was deteriorating and by failing to attempt to sell some or all of the Greb X-Ray stock held by the ESOP as it learned that the financial condition of Greb X-Ray was deteriorating.
 
 
 27
 UMB defended on the basis that it did not make or participate in any imprudent investments in violation of § 1104. UMB argued that it purchased the Greb X-Ray stock at the direction of Greb X-Ray as the ESOP's administrator in accordance with the specific provisions of the ESOP.
 
 
 28
 Following trial to the court, the district court entered a memorandum order, finding that UMB had not violated any duty it owed appellants under ERISA. In so doing, the court found, inter alia, that: UMB purchased Greb X-Ray stock for the ESOP from Greb X-Ray employees who wished to sell their stock, which purchases were made at the direction of ESOP administrator; the value of the stock was determined annually by an independent appraiser not affiliated with Greb X-Ray; the credible evidence shows that the valuations were not done improperly; there was no credible evidence to show any prospective buyers, other than Greb X-Ray, its employees, or the ESOP for Greb X-Ray stock in the mid-1980's; UMB was not informed of any potential buyers for Greb X-Ray stock nor did it make any inquiries concerning the existence of potential buyers; in 1985, unbeknownst to UMB, five employees attempted to oust Curtright; UMB routinely gave its proxy to Curtright; there was no evidence to indicate that UMB's motive in giving Curtright its proxy was to perpetuate Curtright's control of Greb X-Ray; and plaintiffs (appellants) introduced no credible evidence to show that UMB was aware of Curtright's mismanagement.
 
 
 29
 The court concluded that: UMB, as a directed trustee under 29 U.S.C. § 1103(a)(1)[3], was required to follow the proper directions of the administrator unless the instructions violated ERISA; UMB was entitled to rely on the independent appraisal assessing the value of the Greb X-Ray stock; UMB did not violate its duties under ERISA by following the administrator's directions to purchase additional shares of Greb X-Ray stock; UMB did not violate its duties under ERISA by retaining the Greb X-Ray stock in the absence of any offers to purchase the stock and in the absence of any directions from the administrator to sell the stock; ERISA did not require UMB to tender the stock back to Greb X-Ray and such action would have run counter to the ESOP; the decline in the price of the Greb X-Ray stock during 1985 and 1986 was insufficient to show imprudence on the part of UMB; and that, as a directed trustee, UMB was not required to weigh the merits of an investment in Greb X-Ray stock against all other available investment vehicles each time the administrator directed the acquisition or retention of Greb X-Ray stock. (R., Vol. VII, Tab 164 at pp. 8-9).
 
 
 30
 The district court also concluded that: ERISA requires trustees to carry out the aims of the plans they administer; trustees who disregard the stated purpose of an employee stock ownership plan to invest primarily in employer securities and who instead invest in non-employer investments may be liable for breach of fiduciary duties; federal agencies regulating banks had recommended that banks with commercial loan departments and trust departments separate the two; the federal agencies had developed and promoted the concept of erecting a "Chinese Wall" to obstruct the flow of information between bank lending and trust departments; and UMB's commercial loan personnel had acted in conformity with the Comptroller of the Currency and Federal Reserve directives by not communicating Greb X-Ray's commercial loan performance to UMB's trust department personnel. Id. at p. 9.
 
 
 31
 On appeal, appellants contend: (1) the court erred in finding that UMB had not violated § 1104; (2) the court erred in finding that UMB was absolved of liability because its actions were allowed by the ESOP and made pursuant to the directions of the administrator; (3) UMB, once the ESOP became the majority shareholder of Greb X-Ray, was acting in violation of its fiduciary duties; (4) the court erred in finding that the stock purchase agreement restricted the ESOP sale of Greb X-Ray stock; (5) the court erred in finding that there were no other prospective buyers for Greb X-Ray stock in the mid-1980's; (6) the court erred in granting summary judgement in favor of UMB on Count II and holding that UMB did not violate § 1106 by serving simultaneously as a trustee and secured creditor; and (7) that the payment of UMB attorney fees from ESOP assets was a prohibited transaction.
 
 
 32
 At the outset, we observe that Congress, in enacting ERISA, did not explicitly enumerate all the powers and duties of trustees and other fiduciaries. Central States Pension Fund v. Central Transport Inc., 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985). Rather, Congress invoked the common law of trusts to define the general scope of their authority and responsibility. Id. Under the common law, trustees are understood to have such powers as are necessary or appropriate for carrying out the purposes of the trust. Id. In exercising their powers, however, ERISA fiduciaries are required to interpret their plans "in accordance with the documents governing the plan insofar as such documents and instructions are consistent with ERISA § 1104(a)(1)." Pratt v. Petroleum Production Management Employee Savings Plan, 920 F.2d 651, 657 (10th Cir.1990).
 
 
 33
 The decisions of a fiduciary will be upheld unless they are arbitrary and capricious, not supported by substantial evidence or erroneous on a question of law. Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452, 1457 (10th Cir.1991), citing Pratt v. Petroleum Production Management Employee Savings Plan, supra. Judicial review of fiduciary actions is highly deferential. Anderson v. Ciba-Geigy Corporation, 759 F.2d 1518, 1522 (11th Cir.1985). Deferential judicial review applies to the interpretation and implementation of a plan by a plan fiduciary. Hoover v. Blue Cross and Blue Shield of Alabama, 855 F.2d 1538, 1541 (11th Cir.1988).
 
 
 34
 Where, as here, trial is to the court, the resolution of factual issues and conflicting evidence lies solely within the province of the district court. Raydon Exploration, Inc. v. Ladd, 902 F.2d 1496, 1499 (10th Cir.1990). "The factual findings of the district court are presumed correct and should not be set aside on appeal unless they are clearly erroneous." Id. Conclusions of law are reviewed de novo. In re Thompson, 894 F.2d 1227 (10th Cir.1990).
 
 
 35
 Mixed questions of fact and law are reviewed under either the clearly erroneous or de novo standards, depending on whether the mixed question involves primarily a question of fact or the consideration of legal principles. Supre v. Ricketts, 792 F.2d 958, 961 (10th Cir.1986); Love Box Company v. Commissioner of Internal Revenue, 842 F.2d 1213, 1215 (10th Cir.1988) (quoting Supre v. Ricketts ), cert. denied, 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 40 (1988). Inasmuch as appellants' allegations of error involve primarily questions of fact, we will uphold the findings of the district court unless the findings are clearly erroneous.
 
 I.
 
 36
 Appellants contend that the court erred in finding that UMB had not violated § 1104. Specifically, appellants contend that UMB breached § 1104 by failing to discharge its duties for the exclusive benefit of the ESOP's participants with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity would have used.
 
 
 37
 Appellants argue that UMB did not act for the exclusive benefit of the ESOP's participants and their beneficiaries. Without citing to the record, appellants allege that UMB "unquestioningly participated with Mr. Curtright in the purchase and retention of sufficient stock to make the ESOP the majority shareholder in the Company", allowed Curtright "to deal with the assets of the plan [ESOP] in his own interests", and "aided Mr. Curtright in his misuse of the plan assets thereby depriving the plaintiffs [appellants] of their retirement security." (Brief of Appellants at pp. 22-23.)
 
 
 38
 Appellants also argue that UMB failed to discharge its fiduciary duties as the ESOP's trustee in a prudent manner. Appellants contend that prudence required UMB to take an active role in monitoring the ESOP's investments; UMB could not take a passive role and "blindly and uncritically" accept the administrator's directions to purchase the Greb X-Ray stock; UMB "should have known" that Greb X-Ray's financial condition was deteriorating; UMB should not have acquired the Greb X-Ray stock and should not have retained it; UMB was imprudent in giving Curtright its proxy to vote the Greb X-Ray stock; and UMB was imprudent in not obtaining independent investment advice.
 
 
 39
 As set forth, supra, fiduciaries are required to interpret their plans in accordance with the documents governing the plans insofar as the documents and instructions are consistent with ERISA. Pratt v. Petroleum Production Management Employee Savings Plan, supra. The decisions of a fiduciary will be upheld unless they are arbitrary and capricious, not supported by substantial evidence, or erroneous on a question of law. Woolsey v. Marion Laboratories, Inc., supra. Judicial review of fiduciary actions is highly deferential. Anderson v. Ciba-Geigy Corporation, supra. Applying these standards, we hold that the district court's findings that UMB did not violate ERISA are not clearly erroneous.
 
 
 40
 Contrary to appellants' allegations that UMB "unquestioningly participated with Mr. Curtright" and "aided Mr. Curtright in his misuse of plan assets" and failed to discharge its duties as a trustee in a prudent manner in violation of ERISA, the district court specifically found, and we agree, that UMB did not violate ERISA.
 
 
 41
 The ESOP expressly provided that it was "intended to invest primarily in Company stock" and that the administrator, Greb X-Ray, would administer the plan, including, "direct[ing] the Trustee(s) with regard to purchases of Company stock and the fair market value thereof." Under § 1103(a)(1), UMB, as a directed trustee, was "subject to [the] proper directions of [Greb X-Ray as administrator] which are made in accordance with the terms of the plan and are not contrary to this chapter."
 
 
 42
 Appellants have failed to establish that the ESOP was inconsistent with ERISA. Appellants have also failed to establish that UMB's 1983 and 1984 purchases of Greb X-Ray stock, at the direction of Greb X-Ray as the ESOP's administrator, were not made in "accordance with the terms of the" ESOP or "were contrary to" ERISA.
 
 
 43
 We observe that appellants' cause of action under Count I has, since the outset, been predicated on the fact that their ESOP account values declined dramatically from 1985 to 1986 and that they are entitled under ERISA to recover the value of what their plan assets would have been worth, had they been properly and prudently invested. Thus, appellants seek, having settled with Greb X-Ray, the ESOP, and Curtright, to recover under Count I by establishing that UMB's actions were violative of ERISA and caused the decline in their ESOP values. Appellants have failed to meet this burden.
 
 
 44
 Although the appellants established that UMB purchased stock in 1983 and 1984 and that the value of their ESOP accounts declined dramatically during 1985 and 1986, they have failed to establish that UMB's actions were in violation of ERISA. The district court properly found that UMB did not violate ERISA by following the administrator's directives to purchase the Greb X-Ray stock and by retaining the stock in the absence of any directions by the administrator otherwise. The court also properly found that appellants failed to present any credible evidence establishing that UMB was aware of Curtright's mismanagement.
 
 
 45
 Under these circumstances, we agree with the district court that the decline in the price of Greb X-Ray stock during 1985 and 1986--over a year after UMB made its last purchase of Greb X-Ray stock--was insufficient to show imprudence on the part of UMB. ERISA guarantees only the right to receive vested benefits, not a particular amount. Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 512, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402 (1981). Under ERISA, private parties, not the government, control the level of the benefits, id. at p. 511, 101 S.Ct. at 1900, and the total benefits may vary from plan to plan. Id. at pp. 513-514, 101 S.Ct. at 1901.
 
 II.
 
 46
 Appellants contend that the district court erred in finding that UMB was absolved of liability because its actions were allowed by the ESOP and pursuant to the directions of Greb X-Ray as the ESOP's administrator. Appellants contend that Eaves v. Penn, 587 F.2d 453 (10th Cir.1978), effectively disposes of any argument that UMB was absolved of any responsibility simply because its actions were allowed by the plan documents. Appellants argue, citing to Eaves, that a fiduciary cannot escape liability by acting in accordance with the plan documents "if the actions under the documents violate ERISA." Eaves is clearly distinguishable.
 
 
 47
 In Eaves, Ralph Penn (Penn) used his position as trustee to amend a profit sharing plan to an employee stock ownership plan without the prior specific consent of the plan's participants and beneficiaries. As amended, the plan provided that plan assets, to the extent practicable, would be invested in the employer company stock. Penn subsequently utilized all of the plan's funds, loan proceeds, and some of the company's funds to acquire 97% of the employer company. Penn also personally purchased the remaining 3% of the employer company. As a result, Penn "personally and as trustee of the New Plan, acquired all the outstanding stock of the company." 587 F.2d at 456.
 
 
 48
 We upheld the district court's determination that Penn had failed to act solely in the interest of the plan's participants and beneficiaries and with the care, skill and prudence required under § 1104(a)(1). In so doing we rejected Penn's contentions that inasmuch as he had administered the plan in accordance with the plan documents by investing in the company, he had complied with the exclusive benefit and prudent man requirements of § 1104(a)(1).
 
 
 49
 In contrast, whereas Penn utilized his position as the plan's trustee to effectuate his personal acquisition of a million dollar business to the detriment of the plan's participants in violation of ERISA, there is no evidence that UMB ever utilized its position as trustee to further its own interests to the detriment of the ESOP participants in violation of ERISA. Furthermore, unlike Penn who was able to unilaterally orchestrate the use of plan funds to purchase a business, UMB was precluded under the ESOP from purchasing any Greb X-Ray shares unless directed to do so by the ESOP's administrator, and then only at a price determined by an independent appraiser not associated with Greb X-Ray. Finally, UMB was obligated to follow the investment decisions of the administrator, and the ESOP specifically provided that UMB would not be liable for any losses resulting therefrom:
 
 
 50
 The Trustee(s) shall comply promptly with all such directions as long as such directions are not contrary to the Trustee's Fiduciary responsibility as provided by law or contrary to the terms of the Plan and the Trust, and to such extent the Trustee(s) shall not be liable or responsible for any loss resulting to the Trust Fund or to any present or future Participant or Beneficiary thereof by reason of any sale or investment made or other action taken pursuant to and in accordance with the direction of the Administrator....
 
 
 51
 (Addendum to Brief of Appellants, Vol. I, Tab 1, Article X, Section 10 at p. 35).
 
 
 52
 We hold that the district court did not err in finding that UMB was not liable to appellants under ERISA where, as here, its actions were allowed by the ESOP and undertaken pursuant to the directions of the administrator. Unlike Penn, whose "actions under the [plan] documents violate[d] ERISA," UMB's actions did not.
 
 III.
 
 53
 Appellants contend that once the ESOP became the majority shareholder of Greb X-Ray, UMB was acting in violation of its fiduciary duties.
 
 
 54
 Appellants argue that after the ESOP became the majority Greb X-Ray shareholder in 1984, UMB should have taken action to insure that Greb X-Ray was being properly managed. While acknowledging that the district court specifically found that UMB was unaware of the mismanagement or of the decline in Greb X-Ray, appellants nevertheless argue that UMB as trustee should have been aware of the mismanagement. Appellants argue that had UMB acquired such information, it could have acted prudently by changing the management of the corporation, changing the level of its ownership in the corporation, or even bringing a lawsuit for mismanagement.
 
 
 55
 UMB responds that these arguments were not presented to the district court and should not be considered for the first time on appeal. UMB also argues that these arguments are contrary to established Kansas law in that the "majority stockholder does not become a fiduciary for other shareholders by reason of mere ownership of stock" and that it is only when "one steps out of the role as a stockholder and acts in the corporate management, with disregard for the interests and welfare of the corporation and its stockholders that he assumes the burden of fiducial responsibility." McDaniel v. Painter, 418 F.2d 545, 547 (10th Cir.1969).
 
 
 56
 Inasmuch as these arguments were not presented to and considered by the district court, we will not consider them for the first time on appeal. Burnette v. Dresser Industries, Inc., 849 F.2d 1277, 1282 (10th Cir.1988). Moreover, having held, supra, that the district court's findings and conclusions that UMB had not violated ERISA by investing in Greb X-Ray stock were not clearly erroneous, we decline to hold that UMB nonetheless violated its fiduciary duties under ERISA once the ESOP became Greb X-Ray's majority shareholder. Under McDaniel v. Painter, supra, it is clear that, under Kansas law, UMB did not become a fiduciary for the other Greb X-Ray shareholders merely because the ESOP became the majority shareholder.
 
 IV.
 
 57
 Appellants contend that the district court erred in finding that the ESOP was bound by the Greb X-Ray stock purchase agreement which restricted the sale of Greb X-Ray. This argument is without merit.
 
 
 58
 The district court specifically found that:
 
 
 59
 Greb X-Ray is a closely held corporation whose stock is subject to a Stock Purchase Agreement. The Agreement restricts Greb X-Ray stock to the employees of Greb X-Ray, Greb X-Ray Company, and the ESOP.
 
 
 60
 (R., Vol. VII, Tab 164 at p. 4).
 
 
 61
 The above finding is in complete accord with the Stock Purchase Agreement which provides in part:
 
 
 62
 The Stockholders desire to guard against the introduction into the ownership of the Company strangers who may be unwilling or unable to contribute in like manner to the success of the Company. By restricting the privilege of ownership of the shares of stock of the Company to the Company, Stockholders who are actively employed by the Company, former Stockholders ... any Profit Sharing Plan and/or Stock Purchased Plan established by the Company....
 
 
 63
 (R., Defendant's Exhibit 408).
 
 V.
 
 64
 Appellants contend that the district court erred in finding that there were no other prospective buyers for Greb X-Ray stock during the mid-1980's.
 
 The district court found:
 
 65
 There is no credible evidence which would show that prospective buyers, other than Greb X-Ray, its employees or the ESOP, existed during the mid-1980's. The Bank was not informed of any potential buyers nor did it make inquiries concerning the existence of potential buyers. The Bank was aware of the limitations concerning the sale of Greb X-Ray stock contained in the Greb X-Ray Stock Purchase Agreement.
 
 
 66
 (R., Vol. VII, Tab 164 at pp. 5-6).
 
 
 67
 Appellants argue that this finding was erroneous because one Terrance Gooding testified via deposition that he had contacted Curtright and inquired about the acquisition of Greb X-Ray. Although Gooding did testify that he visited with Curtright concerning the acquisition of Greb X-Ray by Picker-International, he also testified that their discussions "never got beyond the fencing and discussions and the romance and good things." (R., Supp.Vol. X at p. 24). Furthermore, Gooding testified that: he did not have any specific recollection of discussing specific purchase terms with Curtright; in order to ascertain the appraised value of Greb X-Ray he would have sent his own accountants and evaluators to determine Greb X-Ray's book value and fair market value but he never sent them; and although he would, in the normal course of matters, have asked Curtright for Greb X-Ray's profit and loss statements, he did not recall doing so in this case.
 
 
 68
 Under these circumstances, we hold that the district court's finding that "there is no credible evidence which would show" the existence of other prospective buyers for Greb X-Ray in the mid-1980's was not clearly erroneous.
 
 VI.
 
 69
 Appellants contend that the district erred in granting summary judgment in favor of UMB on Count II. In reviewing a grant of summary judgment, we apply the same standard applied by the district court under Rule 56(c) of the Federal Rules of Civil Procedure. Osgood v. State Farm Mutual Automobile Insurance Company, 848 F.2d 141, 143 (10th Cir.1988). We will affirm a grant of summary judgment if it is clear from the record that there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law. Willner v. Budig, 848 F.2d 1032, 1033-34 (10th Cir.1988), cert. denied, 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1988).
 
 
 70
 In Count II, appellants alleged that Greb X-Ray, Curtright, and UMB had violated § 1106 by participating in a conflict of interest. Appellants alleged that UMB "was in a conflict of interest situation due to its simultaneous roles as a fiduciary to the Plan Beneficiaries ... and as a secured lender to Greb X-Ray...." (R., Vol. I, Tab 4 at p. 5). Appellants also alleged that "Greb and Bank knew or should have known of Curtright's improper motives in acquiring the Greb stock," that the stock should have been "sold as soon as possible and converted to liquid assets that could be prudently invested for the benefit of the Plan participants." Id.
 
 
 71
 In granting summary judgment in favor of UMB, the court found:
 
 
 72
 Nor did the Bank's purchase as plan trustee of Greb stock, while also acting as a secured creditor of Greb, constitute a prohibited transaction. Brock v. Citizens Bank of Clovis, 841 F.2d 344 (10th Cir.1988), and section 406(a) of ERISA control. The dual role of which plaintiffs complain is not enumerated as a prohibited transaction under section 406(a)(1). Plaintiffs ask the court to imply a violation of ERISA in the Bank's alleged 'conflict of interest.' Such action by the court would be directly contrary to the Tenth Circuit Command in Brock. '[U]nless the act complained of falls within the specific list of dealings proscribed by section 1106 ..., the transaction does not constitute a per se violation of ERISA.' Brock, 841 F.2d at 347. The Bank's dual capacity was not a per se violation of section 406 of ERISA.
 
 
 73
 Plaintiffs are correct in pointing out that Brock holds that absence of a per se violation under section 406 does not automatically mean that defendant has not violated ERISA. Id. at 347. However, plaintiff is able to point to no other competent authority which might indicate that defendant's dual status, standing alone, constitutes a conflict of interest.... The court will not create a prohibited transaction and conflict of interest where Congress and precedent have not indicated one; the court further finds no compelling policy reasons for determining a conflict of interest exists in this fact situation.
 
 
 74
 (R., Vol. V, Tab 119 at pp. 13-14).
 
 
 75
 Thereafter, the appellants filed a motion to reconsider. In affirming its prior order granting summary judgement in favor or UMB, the district court found:
 
 
 76
 Plaintiffs contended that the Bank participated in a prohibited transaction by becoming a secured creditor of Greb X-Ray at the same time it acted as trustee for the Greb ESOP. The court previously held ... that this set of facts presented no apparent conflict of interest.... Plaintiffs argue that the court's previous determination was in error; they cite the statutory language found at 29 U.S.C. § 1106(b)(2) which states:
 
 
 77
 A fiduciary with respect to a plan shall not in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries.
 
 
 78
 Plaintiffs reason that this language prohibits the Bank from acting on both sides of a loan transaction. They also cite the case of Cutaiar v. Marshall, 590 F.2d 523 (3rd 1979), in which the third circuit adopted the position of the Secretary of Labor that a borrower and a lender in the same transaction are always 'adverse' within the meaning of Section 406(b)(2) of ... ERISA....
 
 
 79
 While section 406 of ERISA may always prohibit the trustee from acting on both sides of a loan transaction, that simply did not happen here. The Bank acted as a lender to Greb X-Ray Company, not to the Greb X-Ray ESOP. This is not the sort of self-dealing which the Cutaiar case or the language of section 406 addresses. Again the court can find no authority which would hold that the Bank's dual position as secured creditor for Greb X-Ray Company and trustee for the Greb X-Ray ESOP constituted a conflict of interest. Therefore the court's previous order as to Count II will remain.
 
 
 80
 (R., Vol. VII, Tab 137 at pp. 3-4).
 
 
 81
 Appellants contend that the district court's order granting summary judgment should be reversed because: the district court "failed to consider" Cutaiar v. Marshall; the ruling in Cutaiar that § 1106(b)(2) prohibits transactions that are adverse in a technical sense irrespective of whether actual fiduciary misconduct or harm to the beneficiaries can be demonstrated, is appropriate here; and Brock v. Citizens Bank of Clovis does not prevent a finding of an ERISA violation in this case. Appellants also argue that this court should "announce a rule of law that an ESOP trustee cannot be simultaneously a major secured creditor of the sponsoring company." (Brief of Appellants at p. 46). These contentions are individually and collectively without merit.
 
 
 82
 Appellants' allegations notwithstanding, the district did consider Cutaiar, and properly distinguished it, in disposing of appellants' motion for reconsideration. The district court also correctly applied our holding in Brock "that unless the act complained of falls within the specific list of dealings proscribed by § 1106 ... the transaction does not constitute a per se violation of ERISA."
 
 
 83
 We will not adopt appellants' suggestion that we announce a rule of law that an employee stock ownership plan trustee cannot serve simultaneously as major secured creditor of the sponsoring company. We agree with the district court's observation that "[t]he court will not create a prohibited transaction and conflict of interest where Congress and precedent have not indicated one." (R., Vol. V, Tab 119 at p. 14.)Inasmuch as appellants have failed to establish any genuine issues of material facts or that UMB was not entitled to summary judgment as a matter of law, we hold that the court did not err in granting summary judgment in favor of UMB on Count II.
 
 VII.
 
 84
 Appellants contend that the payment of a portion of UMB's attorney fees incurred in the defense of this action, out of ESOP assets, was a prohibited transaction. Specifically, appellants contend that such payments were not "reasonable expenses of administering the plan" under either §§ 1103 or 1104.
 
 
 85
 Inasmuch as this allegation of error was not presented to the district court, we will not consider it for the first time on appeal. Burnette v. Dresser Industries, Inc., supra. Moreover, Article X, Section 6 of the ESOP specifically provides that "all reasonable costs, charges and expenses incurred by the Trustee(s) in connection with its administration of the Trust Fund, including fees for legal services rendered to the Trustee(s) ... may be paid by the Company, but if not paid by the Company shall be paid from the Trust Fund."
 
 
 86
 We AFFIRM.
 
 
 
 [1]
 As a closely held corporation, Greb X-Ray's stock was subject to a stock purchase agreement. The agreement restricted the sales of Greb X-Ray stock to the employees of Greb X-Ray, Greb X-Ray, and to the ESOP
 
 
 [2]
 29 U.S.C. 1104(a)(1)(B) provides in part:
 [A] fiduciary shall discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries and--
 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use.... (Emphasis supplied).
 
 
 [3]
 § 1103(a)(1) provides in part:
 [T]he trustee ... shall have exclusive authority and discretion to manage and control the assets of the plan, except to the extent that--
 (1) the plan expressly provides that the trustee or trustees are subject to direction of a named fiduciary who is not a trustee, in which case the trustees shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and are not contrary to this chapter....