Carson FRIEND; Collene Friend; Brad Friend; Trav Friend; Carson Lighting, Inc.; Carson Lighting, Defined Benefit Pension Plan, Plaintiffs–Appellants,

v.

SANWA BANK CALIFORNIA, Defendant–Appellee.

No. 92–55641.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1994.

Decided Sept. 13, 1994.

Aaron P. Morris, Good, Wildman, Hegness & Walley, Newport Beach, CA, for plaintiffs-appellants.

Angel Gomez, III, and Anthony J. Oncidi, Hill, Wynne, Troop & Meisinger, Los Angeles, CA, for defendant-appellee.

Before: PREGERSON, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

Does a bank violate federal law when it serves, at the same time, as trustee of a pension plan and creditor of a company whose stock is held as a plan trust asset?

## I

Carson Friend was the sole trustee of the Carson Lighting, Inc. Profit Sharing and Pension Plans ("Plans") until 1990. He was the sole beneficiary of the profit sharing provisions. He and his family were the beneficiaries of the pension provisions.

For at least ten years, until 1991, the Plans invested $796,000 in unsecured promissory notes issued by Supreme Finance, Inc. ("Supreme"), a corporation that financed the purchase of used cars. During this time, Sanwa Bank California ("Sanwa") extended a secured line of credit to Supreme worth $3 million. All other debts owed by Supreme were subordinated to Sanwa's line of credit. In 1987, Supreme began to experience financial problems, and in 1990 it agreed with Sanwa to deposit all its receivables with Sanwa. Sanwa would keep $8,000 in principal plus interest each week and return the excess to Supreme.

In 1990, Friend asked his banker at Sanwa for help administering the Plans and in due course a representative of Sanwa's trust department contacted him. Friend told the trust representative that the Plans were invested in Supreme. According to Friend, Sanwa officials discussed internally the potential for a conflict of interest but did not mention their concerns to Friend. In July 1990, Sanwa became the trustee of the Plans.

In December 1990, Sanwa informed Supreme that it would not extend its line of credit after February 1991. Also in December, Friend's attorney advised Sanwa of its conflict of interest, and Sanwa immediately gave notice of resignation of trustee, effective in April 1991. On June 19, 1991, Supreme filed for bankruptcy. It had only enough assets to cover Sanwa's loan.

The appellants sued Sanwa in state court for breach of fiduciary duty under state law and the Employee Retirement Income Security Act ("ERISA"). Sanwa removed the case to federal court, and the state claims were severed. Both parties moved for summary judgment. The district court granted summary judgment to Sanwa, concluding that neither Sanwa's acceptance of the trusteeship nor its refusal to extend Supreme's credit violated ERISA, and that in any case, there was no harm to the Plans because Sanwa would have refused the credit extension even if it had not been the trustee.

## II

Friend first argues that it was a per se violation of ERISA for Sanwa to agree to become the trustee of the Plans because the statute prohibits trustees to have positions of dual loyalties, except for express exceptions. He relies on 29 U.S.C. § 1104(a)(1), which requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of providing benefits to participants and their beneficiaries."

We can find no cases specifically addressing the question of whether the act of accepting a trusteeship, which places a trustee in a position of conflicting loyalties, is a per se violation of ERISA.[1] The cases Friend cites to support his position are inapposite because they discuss whether transactions the trustee conducted after it became a trustee violated ERISA. *See Donovan v. Mazzola,* 716 F.2d 1226 (9th Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984); *Donovan v. Bierwirth,* 680 F.2d 263 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). Further, nowhere in the

---

1. The district court relied on *Ershick v. United Missouri Bank of Kansas City,* 948 F.2d 660 (10th Cir.1991), which involved a bank serving as trustee of an employee stock option plan ("ESOP") while being a creditor of the employer company. The court held that it could "find no authority which would hold that the Bank's dual position as secured creditor for the ... Company and trustee for the [Company] ESOP constituted a conflict of interest." *Id.* at 671. This case is not directly on point because the ESOP expressly provided that the company would direct the bank

trustee's investments. *Id.* at 667. Therefore, the trustee, although holding positions of conflicting loyalties, was limited in how it exercised its discretion and how it pursued its conflicting interests. Sanwa was not so constrained.

The district court also cited *Brock v. Citizen Bank of Clovis,* 841 F.2d 344 (10th Cir.), *cert. denied,* 488 U.S. 829, 109 S.Ct. 82, 102 L.Ed.2d 59 (1988). However, that case addressed whether a particular transaction conducted after accepting a trusteeship violated the trustee's fiduciary duties.

statute does ERISA explicitly prohibit a trustee from holding positions of dual loyalties.

 A bank does not commit a per se violation of section 1104(a)(1) by the mere act of becoming a trustee with conflicting interests. Congress never intended section 1104(a)(1) to establish a per se rule of fiduciary conduct, *Fentron Indus., Inc. v. National Shopmen Pension Fund*, 674 F.2d 1300, 1307 (9th Cir.1982), and no court has established such a violation. Therefore, we hold that a trustee does not necessarily violate section 1104(a)(1) by accepting a trusteeship with dual loyalties. *Cf. Ershick v. United Missouri Bank of Kansas City*, 948 F.2d 660, 671 (10th Cir.1991) ("The court will not create a prohibited transaction and conflict of interest where Congress and precedent have not indicated one."); *Brock v. Citizen Bank of Clovis*, 841 F.2d 344, 347 (10th Cir.) (Courts have been unwilling to create "a per se violation [of section 1106(b) ] when Congress has not done so"), *cert. denied*, 488 U.S. 829, 109 S.Ct. 82, 102 L.Ed.2d 59 (1988).

Friend also argues that even if there is no per se ERISA rule against a trustee with dual loyalties, in this particular case the district court erred in granting summary judgment because there are disputed issues of material fact regarding his consent to Sanwa's conflicting interests as trustee.

The district court concluded that "[a]ll facts upon which any potential conflict rested were known to Carson Friend at the time Sanwa became trustee." However, the record illustrates that the facts surrounding Friend's understanding of Sanwa's dual loyalties are disputed. In a declaration before the district court, Friend stated that Sanwa Bank never informed him of the potential conflict and that "the thought of a conflict of interest never entered [his] mind." Sanwa admits that the bank officials handling the trusteeship knew of the potential conflict and did not release the information to Friend.

 Although it is disputed whether or not Friend was fully aware of the potential conflict, this fact is not material to the district court's grant of summary judgment. Even if Sanwa had breached section 1104(a)(1) by not considering solely the interests of the Plans' participants when it accepted the trusteeship without Friend's fully informed consent, Friend has not presented a genuine issue of material fact that this act caused the Plans' losses. ERISA holds a trustee liable for a breach of fiduciary duty only to the extent that losses to the plan result from the breach. 29 U.S.C. § 1109; *Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir.1982) (Section 1109 "clearly indicates that a causal connection is required between the breach of fiduciary duty and the losses incurred by the plan"). Whether or not Sanwa had become the trustee or had accepted the trusteeship with Friend's consent, there is no reason to believe that Sanwa would not have refused to renew Supreme's loan and that Supreme would not have become bankrupt, resulting in the Plans' losses. Friend has not alleged that Sanwa would have renewed the loan or have prevented Supreme's bankruptcy if Sanwa had not been trustee or if Friend had given his fully informed consent. Thus, there is no dispute about the lack of a causal connection between Sanwa's alleged breach and the losses incurred by the Plans.

Since ERISA does not expressly prohibit a trustee from having dual loyalties and since there is no showing that harm resulted from Sanwa's acceptance of the trusteeship, the district court did not err in granting summary judgment to Sanwa.

### III

 Friend argues that Sanwa's decision not to renew Supreme's line of credit violated ERISA's provision against a trustee "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). He maintains that *Mazzola* and *Bierwirth* control this issue.

In *Bierwirth*, the trustees of the company's pension plan were also officers of the corporation. 680 F.2d at 265. The court held that they had violated section 1104(a)(1) by using plan assets to buy company stock in order to defeat a takeover bid. *Id.* at 276. In *Mazzola*, two different plans shared the same trustees. 716 F.2d at 1228. The court held that the trustees had violated section 1106(b)(2) by using the assets of one plan to

loan money to the other plan. *Id.* at 1238. In each case, the court concluded that the trustees had misused the assets of the plan.

These decisions are inapposite. As the district court concluded, *Mazzola* and *Bierwirth* "involve fiduciaries actively misusing their trust powers to the detriment of the beneficiaries." In both cases the defendants, acting in their capacities as trustees, spent plan money to benefit themselves or another trust. Here, Sanwa did not act as a trustee and did not spend trust money when it refused to renew Supreme's loan. Rather, it acted as Supreme's creditor. Sanwa did not "deal with the assets of the plan," 29 U.S.C. § 1106(b), notwithstanding its action did affect the assets.

The appellees and the district court cite *Cunha v. Ward Foods, Inc.*, 804 F.2d 1418, 1432–33 (9th Cir.1986) and *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1417 (2d Cir.1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986), to support the argument that a trustee serving in both fiduciary and corporate capacities may make decisions to benefit its own interests without violating its fiduciary duty to the plan, when it acts in its corporate capacity. According to this reasoning, Sanwa was acting as a bank in dealing with Supreme, not as a trustee to the Plans. Under such theory, its refusal to renew the loan, although a decision benefiting Sanwa's interests, did not violate Sanwa's fiduciary duty to the Plans.

Friend maintains that *Cunha, Amato,* and other employer cases are not applicable here because ERISA makes a conflict of interest exception for employers serving as trustees, 29 U.S.C. § 1108(c)(3), but does not make such an exception for creditors of the plan's assets also serving as trustees. Regardless of this special status ERISA creates for employer trustees, they remain liable under section 1106(b), like any other trustee, for conducting transactions that "deal with the assets of the plan in [their] own interest." Thus, when an employer trustee deals with a plan by spending its money, as in *Bierwirth*, or by restructuring the plan to benefit itself, as in *Amato,* the trustee risks violating its fiduciary duty. For our purposes here, the *status* of the trustees as employers in these cases is irrelevant because section 1106(b) focuses on the *transaction.* Whether a trustee is also an employer or a creditor, it only violates section 1106(b) when it uses the assets of a plan for its own benefit. Sanwa did not use the assets of the Plans. Instead, acting as a creditor it conducted a transaction with a third party, which affected the Plans. Sanwa did not violate section 1106(b).

Finally, Friend argues that there is an issue of fact concerning whether Sanwa Bank could have "negotiated with itself," as trustee and creditor, to arrange a plan that would have protected both Sanwa's and the Plans' beneficiaries' interests, rather than have refused to renew the loan. Friend maintains that Sanwa did not do enough as trustee to protect the Plans.

While Sanwa as creditor may have had other options in handling the Supreme loan, Friend has not presented a genuine issue of material fact that Sanwa actually would have pursued another option. As discussed above, there is no evidence, or even allegations, suggesting that Sanwa acting as creditor would not have called in the loan, even if Sanwa as the trustee, or another trustee, had negotiated with it. Friend simply has not alleged facts suggesting that Sanwa's failure to negotiate with itself caused the Plans any losses. *See* 29 U.S.C. § 1109.

Since Sanwa did not deal with the Plans' assets in its own interests, it did not violate section 1106(b) when it refused to renew Supreme's loan. Summary judgment was appropriate.

AFFIRMED.

PREGERSON, Circuit Judge, concurring:

I agree with the majority opinion that there has been no violation of the fiduciary duties under ERISA. Nonetheless, I write separately because I am troubled by Sanwa's dual status as trustee and creditor (*with priority* over the pension and profit sharing plans). The problem is that the debt owed by Supreme to Sanwa has priority over the plans' claim; and there are only enough assets in Supreme to pay Sanwa. This dual loyalties problem will arise whenever a secured creditor becomes trustee to a plan that

holds a claim which is subordinated to the creditor/trustee's claim.

I would prefer to resolve this case by focusing on the ERISA requirements for establishing an employee benefit plan.[1] An employee benefit plan must be established by a written instrument that provides for one or more "named fiduciaries." 29 U.S.C. § 1102(1); § 1102(2) (defining a named fiduciary as "a fiduciary who is named in the plan instrument"). Furthermore, "all assets of an employee benefit plan shall be held in trust by one or more trustees. Such trustee or trustees shall be either named in the trust instrument or in the plan instrument ... *or appointed by a person who is a named fiduciary....*" 29 U.S.C. § 1103(a) (emphasis added).

In this case, Friend was trustee of the plans from their creation in 1977, and he apparently "appointed" Sanwa as trustee in July 1990. According to his declaration, Friend knew that, as compared to the plans, Sanwa's claim against Supreme's assets was superior to the plans' claim, but he did not understand that Sanwa's creditor status created a conflict of interest. (Friend Decl. ¶¶ 20, 24, 46).

As a preliminary matter in every case, we should focus on whether the terms of the trust agreement allow the original trustee to appoint a particular entity as successor trustee. In this case, the record reveals that Sanwa's appointment as successor trustee might have constituted a breach of the trust agreement. The trust agreement provides that the employer (Carson Lighting) shall appoint a trustee and that the Board shall designate any successor trustee upon death, removal or resignation of a trustee. (Retirement Trust, Art. II, § 2.1; Art. VI, § 6.2). Nowhere do the documents grant Friend, as named fiduciary and trustee, authority to appoint a new trustee. If Carson Lighting agreed to Sanwa's appointment as successor trustee, there would be no breach, and there would be no conflict of interest problem because the trustor may appoint a trustee with divided loyalties.

The conflict of interest problem will arise when a named fiduciary (e.g., a trustee) appoints a successor trustee, and the trust agreement does not specify any guidelines for the selection procedure. In such cases, where § 1103(a) authorizes a named trustee to select a successor trustee *without* the employer-trustor's consent, we must insure that the selection does not create conflicts of interest that are unforeseen by the trustor, the original trustee, or the beneficiaries. A potential successor trustee should be required to disclose fully to the original trustee any conflicts of interest. A disclosure requirement would prevent a successor trustee such as Sanwa from holding unforeseen dual loyalties. If the original trustee then consents to the conflict, then the successor trustee's *status* as trustee would be immune from challenge.

A disclosure requirement makes sense especially because the original trustee would remain accountable as a fiduciary for having selected a successor trustee. The original trustee would be liable to the beneficiaries and the plan for giving consent, if consent amounted to a violation of the § 1104(1)(B) prudent man standard of care. Certain district courts have held a trustee liable for breach of fiduciary duty where he resigned without arranging for a suitable and trustworthy replacement. *E.g., PBGC v. Greene*, 570 F.Supp. 1483, 1488 (W.D.Pa.1983) (trustee's "resignation is valid only when he has made adequate provision for continued prudent management of assets"), *aff'd*, 727 F.2d 1100 (3d Cir.), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984); *Freund v. Marshall & Isley Bank*, 485 F.Supp. 629 (W.D.Wisc.1979) (same). Trustee liability likely would exist for example, where the newly-appointed successor was involved presently or imminently in a transaction with the plan. Full disclosure of conflicts would assist the original trustee in making an informed

---

1. The profit sharing and defined benefit pension plans in this case are employee benefit plans. An employee benefit plan is "any plan, fund, or program ... established or maintained by an employer ... to the extent that [it]—(i) provides retirement income to employees, or (ii) results in a deferral of income by employees...." 29 U.S.C. § 1002(2), (3).

selection and in avoiding subsequent liability. I therefore urge disclosure in future cases.