COSGROVE, et al., Plaintiffs,

v.

CIRCLE K CORP., et al., Defendants.

No. CV 89–321 TUC JMR.

United States District Court,
D. Arizona.

May 2, 1995.

Erik M. O'Dowd, O'Dowd, Burke & Lund-quist, P.C., Tucson, AZ, for plaintiffs.

Dan M. Durrant, Mary Angela Jenkins, Susan G. Boswell, Craig H. Kaufman, Dianne C. Kerns, Streich Lang P.A., Phoenix, AZ, Tad R. Smith, Kemp Smith Duncan & Hammond, El Paso, TX, for Circle K Corp.

Kenneth R. Ballard, Ballard Rosenberg & Golper, Universal City, CA, Craig Eugene

Epperson, Lillick & Charles, San Francisco, CA, for Fred Hervey.

Howard Shapiro, Anne Horton Breaux, McCalla Thompson Pyburn & Ridley, New Orleans, LA, for Jane Doe Hervey.

Thomas Preston Burke, Paul Michael Gleason, Daniel Adam Weisberg, Brobeck Phleger & Harrison, Los Angeles, CA, for Karl Eller, Joan Eller.

## ORDER

ROLL, District Judge.

Pending before the Court are class plaintiffs' and defendant Circle K Corp.'s ("Circle K") cross-motions for summary judgment on the issue of whether Circle K was a fiduciary, as defined in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(21)(A), for the Fred Hervey Interests Employees' Benefit Plan ("the Plan") when it purchased certain real assets from the Plan. Also pending before the Court are cross-motions for summary judgment as to whether Karl Eller was a Plan fiduciary for ERISA purposes.

### *Relevant Facts*

The facts relating to this case are set forth in this Court's order of December 23, 1994. *Cosgrove v. Circle K Corp.*, 871 F.Supp. 1248 (D.Ariz.1994). Those facts of particular significance to these motions are described in this order.

At all relevant times to this action, the Plan trustees were Fred T. Hervey, founder and Vice–Chairman of the Board of Circle K and Chairman of the Board of Sun World Corp.,[1] Robert E. Hutchinson, President of Circle K, and Millard Orick, President of Sun World Corp. Other persons owing fiduciary duties to the Plan were Circle K as plan sponsor[2] and plan administrator Brent Foshie.

In 1985, Circle K made a business decision to terminate the Plan. Assets of the Plan included interests in 91 of Circle K's convenience stores. The Plan owned twelve of the stores outright but subject to leases held by Circle K. The Plan owned a reversionary interest in the other 79 stores, which interest was subject to a long-term below-market lease to Circle K and was subordinated to other entities holding a mortgage on the properties.

Upon Plan termination, one of the duties of the trustees was to liquidate and distribute Plan assets. In early 1986, Plan trustees and Circle K officers discussed Circle K's possible purchase of the Plan's interests in the 91 stores.

Robert Zaboroski, an attorney who specializes in ERISA law and who is a member of the El Paso firm of Kemp, Smith, Duncan and Hammond,[3] was counsel to the trustees. In an affidavit dated December 19, 1989, Zaboroski indicated that in a March 7, 1986 letter, he "provided the Plan with a legal opinion." That opinion consisted of Zaboroski's summary of ERISA requirements in order for the sale to Circle K not to be a prohibited transaction. The addressee of this letter, however, was Robert Reade, executive vice-president of Circle K in charge of real estate, and copies of the letter were forwarded to Circle K officers Bill Farmer, Charles Shoumaker, Tom Cosgrove and Circle K attorney Jerry Busby. No notation on this letter indicates it was forwarded to the Plan trustees. Nevertheless, in his affidavit of December 18, 1992, trustee Robert Hutchinson states that the trustees insisted the sale take place according to Zaboroski's recommendations.

Circle K retained an appraiser to render an opinion as to the fair value of the Plan's

---

1. Sun World Corp. is an affiliated corporation with Circle K, sharing the same founder and having common ownership.

2. Circle K reserved certain powers to itself under the Plan charter, including the power to (1) remove the Plan administrator, (2) decide whether or not to reimburse trustees for expenses and to compensate the trustees, (3) to indemnify trustees against trustee liability, and (4) to remove trustees and to appoint successors.

3. The Kemp Smith firm also acted as corporate counsel for Circle K.

assets.[4] According to Hutchinson's affidavit, the trustees reviewed and discussed the appraisal. The record, however, contains no indication that the trustees formally met to discuss the appraisal. To the extent the trustees received legal advice regarding the sufficiency of the appraisal, that advice was received from Circle K attorney Jerry Busby. The trustees decided to sell the Plan's assets for the price fixed in the appraisal. On October 21, 1986, the trustees conveyed to Circle K the Plan's interests in the 91 stores for $4,393,700.

One week prior to the Plan's conveyance of its property interests, Circle K entered into a "non-binding" sale/leaseback transaction with financier Robert Kathary. This agreement contemplated that Kathary would buy 250 stores from Circle K for $100 million. The agreement required Circle K to lease back the stores at a rate several times higher than Circle K had been paying. The Kathary II agreement was finalized in April of 1987. Seventy-five of the 250 stores Circle K conveyed to Kathary in this agreement had been acquired by Circle K from the Plan.

### Discussion

### Circle K's Fiduciary Status

■ *Donovan v. Bierwirth,* 680 F.2d 263 (2nd Cir.1982), is one of the earliest published cases expressing concern when ERISA fiduciaries are placed in positions of divided loyalty. *See also, Donovan v. Mazzola,* 716 F.2d 1226 (9th Cir.1983). As the Second Circuit recognized in *Bierwirth,* ERISA allows for officers and board members of a sponsoring company to serve as trustees of an ERISA plan, 29 U.S.C. § 1108(c)(3), but ERISA trustees have "a duty ... to avoid placing themselves in a position where their acts as officers or directors of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees of a pension plan." 680 F.2d at 271. However, the fact that a trustee holds a position of dual loyalty does not mean that a fiduciary breach has occurred.

*See, e.g., Friend v. Sanwa Bank California,* 35 F.3d 466 (9th Cir.1994).

Evidence exists that the trustees of the Plan were in a position of divided loyalty. Of the three Plan trustees, one was the president of Circle K, the second was its founder and a board member, and the third was president of a closely-affiliated company. Their individual loyalties fell on both sides of this transaction. Any discussions by the trustees concerning the sale of the Plan's assets were strikingly informal, the trustees received legal advice from Circle K's counsel, and Circle K received legal advice from the Plan's counsel. The question before the Court is whether this arrangement is sufficient to cause Circle K to be a fiduciary of the Plan for purposes of the sale of Plan assets.

■ The Supreme Court has recently clarified that ERISA only imposes liability on fiduciaries for breaches of trust. *Mertens v. Hewitt Associates,* —— U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). The Court noted that while ERISA abrogated the common law's imposition of liability on an actor who induces a trustee to breach that trustee's fiduciary duties, ERISA's definition of fiduciary serves to expand "the universe of persons subject to fiduciary duties—and to damages—under § 409(a)." *Id.,* at ——, 113 S.Ct. at 2071. ERISA's definition of fiduciary, as the *Mertens* court recognized, is a functional one: "a person is a fiduciary ... to the extent (i) he exercises ... any authority or control respecting management or disposition of [a plan's] assets...." 29 U.S.C. § 1002(21)(A).

■ Corporations must act through agents. *E.g., Braswell v. United States,* 487 U.S. 99, 109, 108 S.Ct. 2284, 2290, 101 L.Ed.2d 98 (1988). One of the trustees was indisputably an agent of Circle K, and the other two trustees' interests were closely aligned with those of Circle K. If the Plan trustees approved the sale of Plan assets in order to benefit Circle K at the expense of the Plan, they acted as agents of Circle K,

---

4. The validity of this appraisal is disputed by the parties and is discussed at length in the previous order.

relinquishing to Circle K their independent discretion. *See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456 (5th Cir. 1986) (a third party may be liable under ERISA if trustees have relinquished their independent discretion to the third party). If the Plan's trustees, in deciding whether to sell and at what price, acted on behalf of Circle K and not the Plan, Circle K's exercise of such control would then bring Circle K within ERISA's definition of fiduciary.

■ Circle K relies upon several cases which held that plan sponsors were not fiduciaries. These decisions are distinguishable. In *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323 (9th Cir.1985), a benefits claim case, the plan sponsor was not liable because the responsibility for deciding claims was delegated to the Employee Benefits Committee. Merely because employees of the sponsor served on this committee did not indicate that the sponsor exercised control over the committee. *Warren v. Oil Chemical and Atomic Workers Pension Fund,* 729 F.Supp. 563, 566 (E.D.Mich.1989), is also distinguishable. There, the court emphasized that the trustees of the fund included employer and union representatives and that a majority vote of all trustees was necessary for action. The case at bar does not reflect such diversity of self-interest among the trustees.[5]

On the record before this Court, neither side is entitled to summary judgment on the issue of whether Circle K was a fiduciary of the Plan for ERISA purposes as to the sale of Plan assets.

### Karl Eller's fiduciary status

■ Plaintiffs argue that Karl Eller, Circle K's Chief Executive Officer and Chairman of the Board, should also be deemed a fiduciary. The record reflects that Karl Eller was an activist CEO at Circle K and was personally involved in Circle K's efforts to purchase the Plan's assets. It can be inferred from the record that he initiated the discussions with the trustees which led to the sale. He was kept personally informed of the progress of negotiations, legal obstacles, and the results of the appraisal. He determined that Circle K's offer would be no higher than the appraised fair market value. He signed the purchase agreement on behalf of Circle K. While there is a dispute as to whether he had prior approval of the Circle K Board when he signed the agreement, this factual dispute is not determinative as to whether Karl Eller himself caused the trustees to relinquish their independent judgment.

The record is devoid of any actions personally taken by Karl Eller on behalf of Circle K to control or unduly influence the Plan trustees' decision. The record also does not support a finding that Mr. Eller so dominated Circle K that holding him liable as an "alter ego" of Circle K would be appropriate. *Cf. Daniels v. National Employee Benefit Services, Inc.,* 858 F.Supp. 684 (N.D.Ohio 1994) (applying an alter-ego theory as the basis for holding the controlling shareholder of a fiduciary corporation personally liable under ERISA, where he and his wife each owned 50 percent of the corporation). Karl Eller's motion for summary judgment must be granted.

### Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that defendant Circle K's motion for summary judgment on its status as a fiduciary of the Plan and plaintiffs' cross-motion on this issue **ARE DENIED.**

**IT IS FURTHER ORDERED** that defendant Karl Eller's motion for summary judgment on his status as a fiduciary **IS GRANTED** and defendants Karl and Joan Eller are dismissed from this case.

**IT IS FURTHER ORDERED** that Joan Eller's motion for summary judgment, based

---

5. In prior litigation involving the Plan, the Hon. Mary Anne Richey, although relying on a pre-ERISA case, concluded that Circle K's retention of the power "to hire and fire the Trustees of the Plan at will" enabled Circle K to control the Plan. Of course, assumption of limited fiduciary duties by a person does not result in that person being a fiduciary for all purposes. *John Hancock Mutual Life Ins. Co. v Harris Trust & Savings Bank,* — U.S. ——, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993).

on ERISA's preemption of state community property law, **IS DENIED AS MOOT.**